THE STATE, ASHBEL GREEN, PROSECUTOR, v. STEPHEN G. CLARKE ET AL., DEFENDANTS.

1. The act of the legislature of this state entitled "An act for the formation and government of boroughs," approved April 2d, 1891 (*Pamph. L.*, *p.* 280, &c.), does not supersede or, by implication, repeal an act entitled "An act for the formation of borough governments," approved

April 5th, 1878 (*Pamph. L., p.* 403, &c.), and the supplements thereto, and that the act of 1878 and the supplements thereto remain in force and operative.

2. *Quære.* Is the act of 1891, above referred to, unconstitutional?

On *certiorari.*

For the prosecutor, *Abram Q. Garretson.*

For the defendants, *Luther Shafer.*

Argued at June Term, 1893, before Justices DEPUE, LIPPINCOTT and ABBETT.

The opinion of the court was delivered by

LIPPINCOTT, J. This writ brings up for review the order of the presiding judge of the Bergen county Common Pleas, directing a special election to be held on March 11th, 1893, of the legal voters, within certain boundaries in the township of Palisade, in the county of Bergen, to vote for or against the incorporation of a proposed borough, to be known by the corporate name of "The Mayor and Council of the Borough of Tenafly."

The order herein was made under the provisions of an act of the legislature of this state entitled "An act for the formation of borough governments," approved April 5th, 1878, and the supplements thereto, a petition having been presented for such order, in conformity with said act. The proceedings were in accordance with the provisions of the act of 1878 and its supplements, and the election was ordered held under that act. *Pamph. L., p.* 403, &c.; *Rev. Sup., p.* 44. The order was dated February 25th, 1893.

The prosecutor contends that this order and the proceedings must be set aside because the act of 1878, for the purposes of the incorporation of new boroughs, is inoperative, the same having been superseded and repealed by subsequent legislation.

There is no objection here for the want of the requisite

formalities under the act of 1878. The whole force of the contention of the prosecutor is that the act of 1878 is superseded and repealed by the provisions of an act entitled "An act for the formation and government of boroughs," approved April 2d, 1891. *Pamph. L., p.* 280, &c.

The defendants, as part of their answer to this contention of the prosecutor, insist that the act of 1891 is unconstitutional and therefore inoperative as a repeal, by implication, of the act of 1878; but this question should neither be discussed nor decided unless it be absolutely necessary to the decision of the case. *Long Branch* v. *Sloane,* 20 *Vroom* 356. Therefore, primarily, the question to be determined is whether the act of 1891 has the force and effect ascribed to it by the prosecutor, of superseding and repealing the act of 1878.

The first section of the act of 1878 provides "that the inhabitants of any township or any part of a township in this state embracing an area not to exceed four square miles and containing a population not exceeding five thousand, may become a body politic and corporate in fact and in law whenever, at a special election to be called for that purpose, as hereinafter provided, it may be so decided by a majority of votes of the electors of said proposed borough who are qualified to vote at elections for state and township officers."

By the second section of this act, previous to the amendment of 1885, the petition for incorporation was presented to the chosen freeholder of the township, setting forth the name and the boundaries of the proposed borough, signed by persons owning at least one-tenth of the value of the taxable real estate in the limits of the proposed borough, as the same appeared upon the duplicate of the assessor of the township. The chosen freeholder, upon the presentation of this petition, called a special election under the provisions of the act.

By supplement passed in the year 1885 (*Pamph. L., p.* 128, &c.), it is provided that the petition under section 2 of the act of 1878 shall be presented to the judge of the Court of Common Pleas in and for the county in which the said proposed borough is situated, instead of to the chosen freeholder of the

said township, as therein provided, and said judge shall there-upon issue an order for such election in the manner provided in the original act of 1878 and the supplements thereto. The act of 1878 provides for the election of a mayor and six coun-cilmen, the appointment of a borough clerk and the election and appointment of some other officers, and confers upon the mayor and council the right to make by-laws, to make and repeal ordinances, to declare nuisances, provides for filling vacancies in offices, the right to impose and collect a borough tax and to exercise other usual and necessary powers of a municipal local government.

This act was under judicial review in the case of *State* v. *Borough of Clayton*, 24 *Vroom* 277, and it was held in that case—Justice Magie writing the opinion of the court—that this act was a general one, "and not within the prohibition of paragraph 2, section 7, article 4, of the constitution, against the enactment of private, local or special laws regulating the internal affairs of towns," &c.

This act, then, with the supplement referred to, being a valid statute, it is conceded to be still operative unless super-seded and repealed by the act of 1891.

The act of 1891, in its first section, provides "that the inhabitants of any district in this state embracing an area of not more than two square miles and taxable real estate of the amount of not less than one hundred thousand dollars, and within which area resides, during any portion of the year, a population of not less than two hundred, may become a body politic and corporate in fact and in law whenever, at a special election to be called for that purpose, as hereinafter provided, it may be decided by a majority of votes of the electors of said proposed borough who are qualified to vote at elections for state and township officers."

The petition under this act must be presented to the law judge of the county or the Supreme Court judge holding the Circuit Court in such county, and the petition must be signed by persons owning at least one-tenth in value of the taxable real estate in the limits of the proposed borough, as fixed and

established by the judge. The act of 1891, it will be seen, in some respects is fashioned after the act of 1878 and the supplements thereto, but in other respects there are substantial differences. This will be seen by examination of the different sections of the act of 1878 and its supplements and comparing them with the provisions of the act of 1891. In the examination of the questions discussed, it has not been deemed material to examine them in detail. In order to show the general character of these differences, it is needless to go beyond the first sections of the two acts. In the act of 1878 it is the inhabitants of a township or part of a township who may become incorporated. In the act of 1891 it is the inhabitants of any district. In the act of 1878 the area must not exceed four square miles; in the act of 1891 the area must not be more than two square miles. In the act of 1878 there is no provision in relation to the taxable value of the area; in the act of 1891 the taxable value must not be less than $100,000. In the act of 1878 the area must contain a population not exceeding five thousand; in the act of 1891 there must reside within the area during any portion of the year a population of not less than two hundred. There are some other differences. The officers elected under the act of 1891 are, to some extent, for different terms and more numerous, and the form of borough government, to some extent, of greater complexity than under the act of 1878 and the supplements thereto.

The contention of the prosecutor proceeds upon the ground that the act of 1891 is the only one now in force in this state in relation to the creation of borough governments; that the legislature, in this act, has considered the whole subject-matter of the formation and government of boroughs and has embodied the results in this act of 1891 and made it the only legislative guide for future action; and that the statute of 1878 is superseded and impliedly repealed by the subsequent statute of 1891: and that this later act stands as a revision of the whole subject. This contention is based upon the assumption of the constitutionality of the act of 1891,

which question it is not necessary to consider unless it be found that the other position of the prosecutor in the matter is correct in legal principle, for it is well established that an unconstitutional statute cannot, either expressly or impliedly, work a repeal of a former statute on the same subject-matter, and therefore, if the statute of 1891 be unconstitutional, it follows that the statute of 1878 and its supplements, so far as they relate to this matter, still remain operative and in full force. *Miller* v. *Edwards*, 8 *Col.* 528 ; *Devoy* v. *New York*, 35 *Barb.* 264 ; *Harbeck* v. *New York*, 10 *Bosw.* 366 ; *Sullivan* v. *Adams*, 3 *Gray* 476 ; *End. Stat.*, § 192 and cases cited in note.

Now, does the act of 1891 supersede and, by implication, repeal the act of 1878 ?

There is no declaration in the act of 1891 that all acts or parts of acts inconsistent with its provisions are repealed. There is no repealing provision in the act of 1891, and where there is a repeal by implication the two acts must be so inconsistent as to be repugnant to each other in all material points, or else it must be clearly intended by the later act to prescribe the only rule which shall govern the case provided for. *Roche* v. *Jersey City*, 11 *Vroom* 257. The language of every enactment must be interpreted, as far as possible, so as to be consistent with every other law which it does not, in express terms, modify or repeal. The law will not allow the repeal of a former statute by construction where the words may have their proper operation without that result, and the courts are required to uphold the prior law if the two acts may well subsist together. A later statute, which is obscure, will not prevail over an earlier one, which is clear and explicit. One statute is to be construed with reference to another statute on the same subject, as well as by a general survey of the whole context; and the various provisions are to be made to stand together if such a result can be attained upon a comparison of the entire act with others upon the same subject, where there appears no intention to change the general scheme or system of legislation upon such subject, and the earlier statute

harmonizes with the later one. Under the act of 1878 and its supplements, of which there are a number, extending into the year 1893, there existed a general scheme for the incorporation of boroughs upon a classification which, as late as the year 1891, was declared by this court to be constitutional. In examining the statute of 1891 it is difficult to ascertain that there existed any intention to interfere with the creation and government of boroughs under the act of 1878 and such of its supplements as have been held valid; and in *Roche* v. *Jersey City*, 11 *Vroom* 257, where the repeal by implication was based on the contention that the later act treated on the same subject, it was held that such later act must cover the whole scope of the earlier act; and it must appear that the legislature, in the later act, designed a complete scheme of legislation in the matter; and the legislative declaration must be such that, whatever is embraced in the new law shall prevail, and that whatever is excluded shall be discarded; and there must be decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory. *Burlington* v. *Estlow*, 14 *Vroom* 13; *Bracken* v. *Smith*, 12 *Stew. Eq.* 169.

A comparison of the act of 1878, and its supplements, with the act of 1891, applying these principles, will indicate quite clearly that there existed no intention on the part of the legislature that the act of 1891 should take the place of the scheme provided in the act of 1878 and its supplements. By comparison of legislation it might appear that the act of 1891 was intended to take the place of some other legislation which had heretofore been declared invalid by this court. From what appears by the legislation on this subject, and from the act of 1891 itself, especially the provisions of the first section thereof, it would seem to have been the purpose of the act of 1891 to take the place of an act entitled "An act for the formation and government of boroughs," approved March 12th, 1890 (*Pamph. L., p.* 58), which was repealed by an act passed February 3d, 1891. *Pamph. L., p.* 11. This act of 1890 was passed to take the place of an act entitled "An act for the

formation of borough governments in seaside resorts," approved March 29th, 1878, which latter act was by this court declared to be unconstitutional. *Pamph. L.* 1890, *p.* 72; *Id.* 1891, *p.* 11; *State* v. *Somers Point*, 23 *Vroom* 32.

However this may be, there cannot be discovered in the act of 1891 any intention to supersede and repeal the act of 1878 and its supplements. The act of 1891 provides for and applies to an entirely different classification of boroughs. The statutes are to a marked extent, in the first section of each, different in form and effect. The act of 1878 is evidently designed for a more permanent community of larger area and larger permanent population, while the act of 1891 applies by its very terms to a population of an itinerant and fluctuating character. It is clearly designed to apply to a place of temporary resort, with a larger population in one season of the year and a much smaller population at some other season of the year. In fact, by its terms there need be but one voter and but one permanent resident within the area, and there does not appear in this act any intention of curtailing the area or quantity of permanent population under the act of 1878. I can find no argument whatever in the act for such a conclusion. It provides for an entirely different class of boroughs from those provided for in the act of 1878, and whether the classification in the act of 1891 be an unsubstantial one or not, it cannot effect a repeal of the act of 1878 so long as they can be made by their terms consistently to stand together.

It is to be assumed as established that there can be no objections to two or more modes for borough incorporation and government so long as the statutes be general and framed to comply with constitutional requirements. The two statutes would clearly appear to be applicable to different classes of this character of municipalities. The proposed boroughs cannot be incorporated under the act of 1891 while it presents all the features required by the act of 1878 and its supplements.

The statute of 1878 designates a proper class of munici-

palities to be incorporated, and it is not to be determined inoperative simply because other statutes have been enacted relating to another class of such municipalities with essentially substantial differences.

. The conclusion has been reached that there are no provisions in the act of 1891 which tend to show that the legislature intended that it should supersede all or any other acts of the legislature valid in their character for the establishment of boroughs in this state. It does not appear to have been intended as a revision of the subject-matter. The territorial limitation under the act of 1878, under which the proposed incorporation is to take place, is much larger than that contemplated by the act of 1891. The act of 1891 would not be suitable to its convenience and demands. The classification of boroughs by these two acts, relating to their formation and government, is founded upon substantial differences. The difference in population and area was held in *State* v. *Borough of Clayton*, 24 *Vroom* 277, in this court, to be a fairly distinguishing difference, and not unsubstantial or illusive.

In this case, Justice Magie, in speaking upon this subject-matter, having under review the act of 1878, after speaking of the constitutional prohibition against local and special laws, and which, when brought to judicial consideration, must be condemned, says: "While I deem it indisputable that the legislature may, in obedience to this requirement, pass a general law providing a complete system of government for all municipalities or for appropriate classes thereof, I also think it clear that it may pass a series of co-related acts, having a similar purpose. It would be beyond the province of this court to declare one of such laws, providing for a proper class of municipality, lacking in generality because other laws relating to other classes have not been enacted. In like manner, I conceive it would be within the power of the legislature to enact a general law providing a mode by which transitions from a lower to a higher grade of municipality might in every case be effected, yet I find no constitutional objection to a law providing for a transition of that nature, in a single

class of cases substantially distinct from other cases, in which a like transition would be desirable."

The case further holds expressly that the classification by population is not to be pronounced illusive; and the learned justice further says: "For similar reasons, I think the additional characteristic on which the classification of this act rests, viz., the area of the proposed borough, to be one fairly distinguishing the class legislated for, and not illusive or unsubstantial."

Applying these principles to the questions arising in this case, there appears to be no avoidance of the conclusion that the act of 1891 is not a revision of the statute of 1878 or of the other statutes of this state relating to the formation and government of boroughs, and that it does not supersede and, by implication, repeal the act of 1878.

This conclusion renders it unnecessary to consider the question of the constitutionality of the act of 1891.

The proceedings must be affirmed, with costs.