THE ATTORNEY-GENERAL, PLAINTIFF IN ERROR, v. THE
MAYOR AND COUNCIL OF THE BOROUGH OF ANGLE-
SEA, DEFENDANTS IN ERROR.

1. A statute that authorizes the holding of an election for the acceptance
   of a scheme of municipal government by the electors of an area of
   given size and value upon which resides for any period of the year a
   population of two hundred, is not a constitutional enactment; the
   temporary presence of two hundred persons not required to be pos-
   sessed of any element of citizenship, is a purely figmentary character-
   istic and can in no way be germane to the exercise of local municipal
   franchises by the inhabitants who are possessed of the constitutional
   and legislative requirements of electors.
2. "An act for the formation and government of boroughs" (*Pamph. L.*
   1890, *p.* 58) is unconstitutional.

On error to the Supreme Court.

For the relator, *John J. Crandall.*

For the defendant, *Samuel W. Beldon* and *Morgan Hand.*

The opinion of the court was delivered by

GARRISON, J. This information exhibited by the attor-
ney-general directly questions the right of the mayor and
council of the borough of Anglesea to exercise the franchises
of a municipal corporation of this state. The plea to which
a demurrer has been filed brought before the Supreme Court—
*first*, the apparent existence of any legislative authority for
the corporate life of the defendant; and, *second*, the consti-
tutionality of such legislation, if any such were apparently
part of the statute law of the state.

The legislation concerned is—*first*, "An act for the forma-
tion and government of boroughs," approved March 12th,
1890 (*Pamph. L., p.* 58), under which the defendant claims
its incorporation; and, *second*, "An act to repeal an act enti-
tled 'An act for the formation and government of boroughs,'"
approved March 12th, 1890 (*Pamph. L.* 1891, *p.* 11), by

which the act of 1890 was expressly repealed, with a saving clause, however, as to incorporations already organized under the repealed act. The difficulties in the way of a lucid conception of a body having organs the source of whose vital supply has been cut off, is of secondary moment compared with the practical evasion of the constitutional inhibition against the granting of special franchises that will result if such franchises may be perpetuated in their donees, while at the same time the door is closed to all others by the repeal of the investive act. The resolution of the question thus presented in favor of the relator would not, however, in the least degree tend to sustain his contention, viz., that the saving clause being bad, the rest of the act must operate as a naked repealer.

Where part of a statute is unconstitutional, the remaining part may stand only when it will operate in accordance with the apparent legislative intention, and a provision that is unconstitutional and ineffectual as a law is yet to be regarded upon the question of the intention of the lawmaker. In the present case, there is nothing to warrant the belief that the legislature would have passed the residue of this statute as it will stand after the excision of the proviso; indeed, the contrary is perfectly obvious. The effect, therefore, of holding the proviso bad would not be to repeal the act of 1890, but to eliminate from the statute-book the repealer itself. Pursue, therefore, what course we may, we must ultimately consider whether the act of 1890 is a valid expression of legislative power. The statute in question purports to be a general act, conferring extensive governmental powers, including taxation, public improvement, the granting of licenses and all the machinery of a modern municipality. The governmental scheme thus tendered may become operative only when the following conditions, and all of them, are in conjunction. The area to be included must not exceed two square miles, and must have a real taxable value of at least $100,000, provided "during any portion of the year a population of not less than two hundred" resides within such area.

The election by which the act may be accepted, as well as those by which the municipal offices are to be filled, must be held by electors who, by the constitution of this state, must ·be male citizens, and by legislative requirement must have had certain fixed periods of state and local residence.   It will be perceived, therefore, that a population of two hundred, whose residence may be for any portion of a year, does not, by any necessary implication, include a single person capable of participating in either the preliminary or the subsequent acts of citizenship or of government.   All idea of a *domicilium*, all that presumption of an intention to remain or to return that is intended by the word "resident," is negatived by the express limitation that any period of a year will suffice for the sort of "residents" required by this act.   As was said by Mr. Justice Lippincott, in *Green* v. *Clarke*, 27 *Vroom* 69, when speaking of this same act, "by its terms there need be but one permanent resident within the area."   Inasmuch as a day is the shortest period of a year ordinarily recognized at common law, it must be assumed that a fraction of a day was not in the legislative mind.   A day, however, in law and in fact, is some period of a year and would fully comport with the prescribed residence, and inasmuch as a sojourn for such a period, or for any period short of that required by the election laws, would not, even in the case of a male, clothe him with the qualifications of an elector, it is not easy to see in what respect the element of belonging to the human species renders the presence of two hundred individuals any more germane to the legislation proposed to be based thereon than would be the presence of a like number of any other animate, or, for that matter, inanimate, objects.   The scheme of the act admits of an application by which electors, however few, may vote for this charter whenever two hundred persons not required to be electors shall have spent twenty-four hours within an area of given size and value.   The object of this temporary presence is no more pertinent than is the extent of its duration.   Sunday visitors at a summer hotel, steamboat excursionists who, by accident or design, have stopped over a day,

a camp meeting, or even a gang of unnaturalized·day laborers, will amply fill every requirement. Under the scheme propounded, upon the happening of any of these events, the departing sojourners would leave behind them a governmental opportunity, actually called into being by their adventitious presence, with which they could have no rational connection and in which they would have no necessary, or even probable, participation; while an adjoining district, identical in area, value and inhabitants, would have no such opportunity, because it had not, by a like chance visitation, been brought within the class to which alone the governmental apparatus in question was peculiarly appropriate.

I confess my inability to see how such a requirement can have any more to do with investing local electors with the power of municipal franchise than if the fortuitous condition were that two hundred cattle must graze on the meadows or two hundred pine trees stand in the forest.

The classification adopted has no real basis; it is at best a mere figment, and the legislation founded thereon falls under the constitutional interdict as construed by this court, viz., that distinctions that do not arise from substantial differences constitute no ground of support for legislation. *Hammer* v. *State,* 15 *Vroom* 667.

The judgment of the Supreme Court should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Gummere, Ludlow. Magie, Bogert. Brown, Sims, Smith, Talman. 11.