RICHARD M. J. SMITH, DEFENDANT IN ERROR, v. THE BOROUGH OF HIGHTSTOWN ET AL., PLAINTIFFS IN ERROR.

Argued November 23, 1904—Decided January 20, 1905.

1. The Borough act of 1897 (*Pamph. L., p.* 285) is a general law regulating the internal affairs of that class of municipalities, and therefore repeals inconsistent provisions of previous local or special charters of boroughs.

2. It confers upon the councils of all boroughs power to license persons for certain specified matters, and thereby evinces a legislative intent to supersede and abrogate the provisions of local and special charters on the subject-matter of licenses.

3. The provisions of section 96 of the Borough act of 1897 are applicable to boroughs taking the place of *de facto* corporations which were the subject of the legislation contained in the "Act relating to boroughs and borough commissions," approved April 21st, 1896 (*Pamph. L., p.* 339), and not to boroughs taking the place of boroughs having a previous unquestionable corporate existence.

---

On error to the Supreme Court.   For opinion of that court see *ante p.* 276.

For the plaintiffs in error, *Linton Satterthwait* and *James Buchanan.*

For the defendant in error, *Aaron V. Dawes.*

The opinion of the court was delivered by

MAGIE, CHANCELLOR. The judgment of the Supreme Court brought here by this writ of error annulled and set aside the

action of the common council of the borough of Hightstown in granting a license for the keeping of an inn or tavern.

It is here contended that the Supreme Court erred in this action. It is insisted that the common council of that borough acquired authority to issue such a license under the provisions of the "Act to incorporate the borough of Hightstown." approved March 5th, 1853 (*Pamph. L., p.* 312), and had not been deprived of the authority thus conferred by the provisions of the act entitled "A general act relating to boroughs (Revision, 1897)," which act was approved April 24th, 1897. *Pamph. L., p.* 285.

The judgment below was grounded upon the opinion of Mr. Justice Swayze, who held that the authority conferred upon the common council by the charter of the borough had been taken away by the Borough act of 1897. The opinion of Justice Swayze is entirely concurred in by this court, but it is deemed best to add somewhat to what he has said.

The amendments to our constitution, adopted in 1874, expressly require the legislature to pass general laws regulating the internal affairs of municipalities and prohibit the passage of private, local or special laws having that purpose. It is the settled doctrine of our courts that general laws, passed in compliance with the constitutional mandate, are to be construed as repealing inconsistent provisions of previous local or special laws, whether they contain an express repealer or not, and if they deal with the subject-matter of such previous laws a legislative intent is disclosed to supersede and abrogate the latter. *Haynes* v. *Cape May,* 23 *Vroom* 180; *Farr* v. *Bayonne,* 25 *Id.* 125; *Acquackanonk Water Co.* v. *Passaic,* 36 *Id.* 476; *Central Land Co.* v. *Bayonne,* 27 *Id.* 297; *Catholic Protectory* v. *Kearney, Id.* 385; *Crookall* v. *Matthews,* 32 *Id.* 349; *S. C.,* 33 *Id.* 799; *Peal* v. *Newark,* 37 *Id.* 265; *Vreeland* v. *Pierson,* 41 *Id.* 508.

That the Borough act of 1897 is a general law admits, in the judgment of the court, of no possible doubt. It has been referred to here as an instance of an attempt by the legislature to perform a constitutional duty in enacting uni-

form legislation in respect to the class of municipalities called boroughs. *Hermann* v. *Guttenberg,* 34 *Vroom* 616, 624. The title of the act, and every provision made therein, indicates a purpose of covering by its provisions the whole sphere of municipal action by that class of municipalities. When the legislature, by the act, conferred authority upon the councils of the boroughs, it could not have been unmindful of the fact that the power to license had been frequently conferred upon such governing bodies. It must be assumed to have been familiar with the fact that such governing bodies in existing boroughs formed under special charters were in some cases endowed with the power to license, as was the borough of Hightstown, upon which borough there had been conferred, by the nineteenth section of its charter, power to license not only inns and taverns, but also shows, menageries, collections of wild beasts or animals, &c. With such knowledge the legislature passed this general act for all boroughs. It therein dealt with the subject of licenses in such boroughs, and empowered the councils thereof to license and regulate many matters, including hawkers and peddlers, public places of amusement, itinerant vendors of medicines and merchandise and other matters. When it omitted from the powers thus conferred the power to license inns and taverns, it admits of no doubt that that power, as conferred by some local charters, was impliedly repealed, and the general act thereby superseded and supplanted the special provisions. The subject of licenses was dealt with; a general authority was expressly given and the particular authority of local statutes was supplanted.

The construction thus given is fortified by the express provision of the repealer contained in the act of 1897, in the ninety-seventh section, which declares that all "acts and parts of acts, general or special, inconsistent herewith, are hereby repealed." I think it obvious that such a clause indicates a legislative intent to repeal local regulations on the subject of licensing and substitutes those on that subject contained in the provisions of the general act. The result reached on this subject in the opinion below was correct.

It is, however, contended here, as it was below, that the general act itself excludes this construction by preserving the provisions of the special charter of Hightstown on this subject. The contention is that the legislature evinced an intent not to generalize upon that subject, but to leave it in the diversity which had previously existed, when some boroughs under special charters possessed authority to license inns and taverns and others did not. Whether, if this contention should be yielded to, the whole act would not be avoided, need not be considered. The contention rests upon the provisions of the ninety-sixth section of the General Borough act, which, in respect of the contention, is in these words as to certain existing boroughs: "They shall retain, hold, possess and enjoy and be absolutely invested with all the rights and property heretofore possessed and enjoyed by the said boroughs."

The nineteenth section of the charter of Hightstown conferred upon the common council "the right and power" of licensing inns and taverns. When the legislature declared in the general act that existing boroughs (if that was the scope of this section) should retain all rights and property, did they intend to leave the power of licensing inns and taverns in the power of Hightstown? In my judgment it does not admit of doubt that the language is incapable of expressing such an intent. In the special charter the right of licensing is coupled with the word "power," and by common rules of construction the right thus expressed is that which is analogous to a power.

In the ninety-sixth section of the General Borough act the word "right" is associated with the word "property," and under like rules of construction it must be construed as referring to rights such as may be considered property, or exercised by or in property. This would exclude the power of licensing inns from the effect of the clause relied on in that section if the same is in any sense applicable to the borough of Hightstown.

But, in my judgment, the ninety-sixth section of the General Borough act is not applicable to the borough of

Hightstown or to any borough existing under valid special charters at the time of its adoption. The language of the section is peculiar. It enacts that the inhabitants of every borough theretofore established, formed or organized under the provisions of any law of this state, and which has thus become and is now an "ostensible or *de facto* corporation exercising corporate powers," is thereby created a borough with corporate powers, to be governed by the provisions of the act. It will be observed that the. generality of the first·clause relating to former organizations under the provisions of any law, is limited by a second ·clause which restricts its meaning to such organizations as had an ostensible or *de ·facto* existence. It must be taken as meaning corporations with colorable, and not with indisputable, authority. When the language of the clause is examined, it admits of no doubt that its provisions are adopted, with some alteration, from the provisions of the second section of the "Act relating to boroughs and borough commissions," approved April 21st, 1896. *Pamph. L., p.* 339. That act was designed to cure a situation which resulted from the previous passage of a number of acts of similar character relating to boroughs and borough commissions. One of those acts had been judicially declared to be invalid, because it violated the constitutional prohibition against special legislation regulating municipal affairs. *Attorney-General* v. *Anglesea, 29 Vroom* 372. It seemed obvious that all the acts in question were open to the like objection, and, indeed, the decisions of the Supreme Court and of this court so indicated. It must have been within legislative knowledge that a number of municipalities had been formed under those defective and invalid acts. The municipal corporations thus apparently in existence had obtained possession of property, had incurred liabilities, had imposed and collected taxes and performed various municipal functions in reliance upon the validity of these various acts. It was to cure that situation that the legislature adopted the act of 1896. Whether that act was within the power of the legislature was a question open for contest. It was

afterward brought before the Supreme Court, and was there declared to be a valid exercise of legislative authority. *Kennedy* v. *Belmar,* 32 *Id.* 20. That decision was rendered in the November Term, 1897. It had not been rendered, nor had the question been adjudicated, in April, 1897, when the General Borough act now under consideration was passed. The curative act of 1896, by its first section, repealed the obnoxious and invalid or questionable acts respecting boroughs and borough commissions, to which it was intended to apply. Then, by its second section, it provided that every borough or borough commission, established or formed under the provisions of any of those acts, "and which is now a *de facto* corporation exercising corporate powers," should be created a borough, under the Borough act of 1878 and the acts supplementary thereto. It thereupon proceeded to declare that each of said boroughs should retain, hold, possess and enjoy the rights and property before possessed and enjoyed by the said borough or borough commission, and should be liable and responsible for the contracts, &c., of such borough or borough commission which had been made or incurred under the provisions of any act or acts of the legislature, whether or not such act or acts lawfully conferred the power to make or incur the same.

When the legislature, in April, 1897, came to deal with the question of a general law for boroughs, it found these organizations which had been established and were assumed to be *de facto* organizations under laws which had been, in one instance, declared invalid, on grounds which would necessarily invalidate the others, with their property and liabilities in the state I have described. The legislature of 1896 had designed a mode of relief which had not then been construed by the courts. Whether or not that act was a valid expression of the legislative will was not clear. There was a possible question whether or not the act was general, within the constitutional provisions. That question was afterward presented, but not decided until after the act under consideration had been passed. But when the legislature proceeded to pass

that act as a general law covering every species of borough corporation, and it perceived that the previous provision for the relief of these *de facto* corporations had been left in this uncertain and doubtful state, and had been or would probably be contested, they wisely included in the general act this section 96, embodying, with some amplification, the provisions of the curative act of 1896. But the language used makes clear that the provisions of that section were not intended to apply to any other than those corporations properly characterized as ostensible or *de facto* corporations exercising corporate powers. Such corporations taking the place of the *de facto* organizations, the legislature proposed to invest with the rights and property of the *de facto* corporations. Upon the boroughs thus created was imposed the responsibility and obligations of the *de facto* corporations, whether made under laws lawfully conferring power in that respect or not. In this view I deem it beyond question that the provisions of section 96 are entirely inapplicable to the borough of Hightstown, or any other borough organized under a special charter, or any other borough than such as had become colorable or *de facto* corporations.

It results that the judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, REED, BOGERT, VOORHEES, VROOM. 10.

*For reversal*—None.