THE STATE v. THE MAYOR AND COUNCIL OF THE BOROUGH OF CLAYTON.

The "Act for the formation of borough governments," approved April 5th, 1878 (*Rev. Sup.*, *p.* 44), is a general act, and not within the prohibition of paragraph 11, section 7, article IV., of the constitution, against the enactment of private, local or special laws, regulating the internal affairs of towns, &c.

---

On demurrer to a plea to an information filed by the Attorney General *ex officio*, calling the mayor and council of the borough of Clayton to answer by what warrant it claimed to act as a municipal corporation.

Argued at November Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the state, *J. P. Stockton, Attorney General, J. W. Wescott* and *George A. Vroom.*

For the defendant, *John S. Jessup.*

The opinion of the court was delivered by

MAGIE, J. The only contention in support of the demurrer is, that the legislative act, under which defendant by

its plea claims to have acquired its corporate rights, is unconstitutional.

The act thus challenged is entitled "An act for the formation of borough governments," and was approved April 5th, 1878. *Rev. Sup., p.* 44. The insistment is, that this act falls within the prohibition of paragraph 11, section 7, article IV., of the constitution, against the enactment of private, local or special laws, regulating the internal affairs of towns, &c.

No other question has been presented.

The act in question provides for the incorporation of the inhabitants of any township, or part of a township, embracing an area not exceeding four square miles, and containing a population not exceeding five thousand, whenever, at an election called and conducted in a specified manner, a majority of the electors therein, qualified to vote for state or township officers, approve. To the corporation thus formed is granted certain municipal powers, greater in extent and variety than those possessed by townships. The form of government of the corporation is also more complex than our simple township government, and the powers conferred are to be exercised by a local legislative body.

Such legislation manifestly regulates the internal affairs of towns, within the settled meaning of the constitutional clause relied on by the state. Therefore the only problem to be solved in this case is, whether the act complained of is general.

By the obvious construction of this constitutional clause—a construction uniformly put upon it when brought in question in this court or the Court of Errors—a law respecting municipal corporations and regulating their internal affairs, will be general, although it operates only on a class of municipalities, provided that class is composed of all municipalities which, considering the purpose of the legislation, are distinguished from others by qualities or characteristics such as make the legislation appropriate to them and inappropriate to others.

In determining whether this act is general, within this meaning, its purpose is first to be considered, and it is then to be determined whether the municipalities on which it operates

have substantial distinctions segregating them from other municipalities, and evincing that such legislation is germane to them and not to others.

The design of the act is to give authority and opportunity to the inhabitants of townships—the lowest grade of municipality in our system—to acquire, by the act of a majority of legally qualified voters, another and somewhat higher grade of municipal government, with increased powers for the management of local affairs.

Experience has shown that, as communities grow and develop, a necessity arises for the acquisition of a wider range of municipal powers. As the hamlet becomes a village, or the village develops into the town or city in size or density of population, it becomes essential, in order best to protect property, ensure public order and promote public convenience, to endow the local government successively with increased powers and capacities. This necessity must be taken into account in framing any code of municipal laws.

Under the requirement that such legislation must be by general laws, it has been thought that, when the legislature has enacted a complete system of laws for all classes, or for any class, of municipality, it may, by other acts from time to time, select localities and designate boundaries, the inhabitants within which should thereafter be incorporated as a municipality within one or another of such classes.

This notion has found expression in section 19 of this act, which provides, that if the legislature shall, by any special statute, name, lay out and designate the boundaries of any borough not exceeding in area and population the limits specified, said borough shall be held and taken to be a borough, as if its incorporation had been voted upon in the manner required by the act.

It is unnecessary to determine whether the enactment of section 19 is within the legislative power. The present corporation was not organized under it, and the provisions of this section are evidently so disconnected from the scheme of the act that, if improper, they may be rejected.

But no reason has been given, and I can perceive none, why the legislature may not confer on localities, which as they grow and develop feel the necessity of higher forms of local government and broader powers for local purposes, the right to put on such forms and acquire such powers by their own act. Indeed, I conceive that the constitutional correctness of such legislation was authoritatively settled by the late decision of the Court of Errors, sustaining an act giving authority to certain municipalities, by the vote of their electors, not only to accept municipal powers, but also to adopt and take on new forms of municipal government. *In re Cleveland,* 23 *Vroom* 188.

This being the purpose of the act, we find that by its terms it can operate only on the inhabitants of townships within a limited area, and not exceeding a specified number. Does the act adopt a proper classification of objects for such legislation?

It contemplates a transition from a lower to a higher grade of municipality in a single instance. No provision is made for the acquisition of higher forms of municipal government when the need may arise in other cases.

In *Long Branch* v. *Sloane,* 20 *Vroom* 356, the act under consideration gave authority and opportunity to acquire a borough organization of like character to the inhabitants of various municipalities, some of which were of a higher grade of municipality, and possessed broader powers than the proposed borough. It therefore contemplated a transition which in some instances would increase, and in other instances would diminish, municipal powers and capacities. The classification therein adopted was deemed faulty, because the act, having thus broader scope, was made to operate only on the inhabitants of certain municipalities, and excluded those of other municipalities which bore precisely the same relation to the purpose of the act.

Does the act before us lack generality because it only provides for a transition from the lowest to a higher grade of municipality?

The mandate of the constitution expressly requires the legislature to pass general laws for the regulation of the internal affairs of the municipalities of the state. The province of the courts in this respect is limited. If there be a plain violation of the prohibition against local and special laws, it must, when brought to judicial consideration, be condemned, but there our responsibility ceases. The duty and responsibility of obedience to this requirement of the constitution rests with the legislature.

While I deem it indisputable that the legislature may, in obedience to this requirement, pass a general law, providing a complete system of government for all municipalities, or for appropriate classes thereof, I also think it clear that it may pass a series of co-related acts having a similar purpose. It would be beyond the province of this court to declare one of such laws, providing for a proper class of municipality, lacking in generality because other laws relating to other classes had not been enacted.

In like manner, I conceive it would be within the power of the legislature to enact a general law providing a mode by which transitions from a lower to a higher grade of municipality might in every case be effected. Yet I find no constitutional objection to a law providing for a transition of that nature in a single class of cases substantially distinct from other cases in which a like transition would be desirable.

A class composed of those municipalities which in our commonwealth have the simplest organization, and possess the least municipal powers, is, in my judgment, plainly distinguishable from others, for the purpose of being given an opportunity to take on a higher form of government and acquire more extended powers.

Is the act lacking in generality because limited by a prescribed area and population ?

That population affords a substantial distinction for the classification of municipalities in respect to legislation in some cases, is well settled. *Warner* v. *Hoagland*, 22 *Vroom* 62 ; *Hart* v. *Scott*, 21 *Id.* 585 ; *Randolph* v. *Wood*, 20 *Id.* 85 ;

*S. C.*, 21 *Id.* 175. The principle is, that when the purpose of the legislation is appropriate to municipalities of large or of small population, and inappropriate to others by reason of their smaller or larger population, then population is a characteristic on which a classification for such legislation may be based.

It cannot be doubted that population does bear a plain and obvious relation to the necessity and propriety of various grades of municipal government, and such is the doctrine of the cases last cited.

How a proper characteristic is to be applied to make up the class to be legislated for, is largely, perhaps wholly, within the province of the legislature to determine. All that courts can do is to pronounce a classification valueless when based on unsubstantial differences, or on characteristics in themselves illusive or applied illusively.

The legislature might, therefore, have well declared that this act should not operate on less than a specified population, for the purpose of the act might be deemed inappropriate to a small population not likely to need more extended municipal powers, and likely to be burdened by the expense of a more complex government.

But the act has been made to operate on a population within a fixed number. Here a different question arises, but to be settled by an application of the same principle. The legislature, probably conceiving that the imposition of the burden of such a corporation on a too limited population without necessity was guarded against by the provisions submitting the proposed organization to a vote, have used population as fixing a limit beyond which municipal powers of the limited extent provided for in this act should not be acquired. This requires the inference that the legislature determined that such a borough organization, appropriate and sufficient for a population not exceeding five thousand, would not be appropriate or sufficient for a greater number. Can we pronounce this erroneous or such classification illusive? I think not. It must be assumed that the legislature designs an ex-

tension of the system, and its eventual completion in a code of municipal laws satisfying the constitutional requirement.

For similar reasons I think the additional characteristic on which the classification of this act rests, viz., the area of the proposed borough, to be one fairly distinguishing the class legislated for, and not illusive or unsubstantial. On this point it may be added that, by a supplement to the act in question, this characteristic seems to have been eliminated.

The demurrer must, therefore, be overruled.