## MICHAEL FOLEY v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN.

1. "An act to enable cities of the second class of this state to repave streets and to issue bonds in payment therefor" (*Pamph. L.* 1896, *p.* 94) is unconstitutional, for the reason that the localities in which it operates are specified by means of population not classified with reference to it.

2. The meaning of the constitutional interdict and its application to legislation are judicial questions.

3. The legislature may, without infringing upon this interdict, subdivide cities for the purposes of legislation either by creating the subdivision in the same law that declares the legislative will with respect to it, or by referring for that purpose to a general legislative classification previously made. Whether in either case the legislation present a subject for judicial control depends upon whether the classification be substantial or illusive; "substantial," in this sense, means that the limitation is incidentally consequent upon the character of the legislative provisions; "illusive," that the selection is extraneous from it. Such "illusiveness" results equally when a classification is created with "a view to escaping the constitutional restriction," and when one is adopted that has a like result.

4. Legislation for municipalities may deal with the municipal apparatus as such, or it may affect the citizen in other respects. Where the governmental apparatus alone is the subject of legislation, population ordinarily so fully connotes all the essential conditions that the general subject is, in the absence of palpable evasion, a question for legislative judgment. But where the legislation affects the citizen or taxpayer in other respects, classification by mere population is substantial or illusive according to the criterion above indicated, and hence presents a question for judicial examination, and, if necessary, for judicial control.

5. *Quære.* Whether the inequality imposed by this act under color of classification brings it within the fourteenth amendment of the federal constitution.

On *certiorari.*

Argued at November Term, 1897, before Justices GARRISON and LIPPINCOTT.

For the prosecutor, *William D. Edwards.*

For the defendant, *James F. Minturn.*

The opinion of the court was delivered by

GARRISON, J.    Under the title "An act to enable cities of the second class of this state to repave streets and to issue bonds in payment therefor" (*Pamph. L.* 1896, *p.* 94), the legislature enacted that in such cities the cost of repaving streets, when ordered by the governing body thereof, might be met by the issue and sale of bonds, the principal and interest of which should be paid by general taxation through the instrumentality of a sinking fund.

Inasmuch as this legislation does not lay down a rule for all cities, the judicial inquiry is whether it rests upon such a subdivision of them as to be, in a constitutional sense, a general law.    If, for the formula "cities of the second class," there be substituted that which is its real and only meaning, viz., "cities having a population of not less than twelve thousand nor more than one hundred thousand" (*Gen. Stat., p.* 458), and the question be then stated in the terms that have been adopted by the courts of this state, the inquiry presented is whether there is anything in the fabric, character, situation or circumstances of the cities affected by this act not shared by cities of other classes that renders the rule suitable to the class selected and to it alone.    To state the question is, in effect, to answer that part of it that rests in matter of fact, for the only distinguishing feature of the class of cities selected is that they have more population than some of the cities of this state and less than others.    So that the legal inquiry is whether the mere fact of this intermediate position, in point

of population, is consistent with the selection of the cities so situated for the exclusive imposition of the proposed powers.

Before entering upon this inquiry a preliminary contention is raised, viz., whether the subject be at all one for judicial interference, in view of the fact that the statute in question is based upon a general act classifying the cities of this state for the purposes of legislation.

Whatever doubts may have been entertained or expressed upon this point are, in my judgment, entirely set at rest by two recent decisions in the Court of Errors and Appeals. I refer to *Mortland* v. *Christian*, 23 *Vroom* 521, and *Wanser* v. *Hoos*, 31 *Id.* 482.

Placing these two cases side by side, and reading each decision in the light of the other, the state of the law upon this subject is that the meaning of the constitutional interdict and its application to specified legislation are judicial questions; that the legislature may, without infringing upon this interdict, subdivide cities for the purposes of legislation, either by creating the subdivision in the same law that declares the legislative will with respect to it or by referring for this purpose to a general legislative classification already ordained.

Whether, in either case, the legislation presents a subject for judicial control depends upon whether the classification be substantial or illusive—substantial, in this sense, meaning that the limitation is incidentally consequent upon the character of the legislation; illusive, that the selection is extraneous from it.

Such illusiveness results equally when a classification is created with a view of escaping the constitutional restriction and when one is adopted with a like result.

Legislation for municipalities may deal with the municipal apparatus as such, or it may affect the citizen in other respects. Where the governmental apparatus alone is the subject of legislation, population ordinarily so fully connotes all the essential considerations that the general subject is, in the absence of palpable evasion, a question for legislative judgment. But

where the legislation affects the citizen or taxpayer in other respects, classification by mere population is substantial or illusive according to the criterion already indicated, hence may present a question for judicial control.

· All that was really decided by Mortland *v.* Christian was that the specified legislation solely concerned governmental apparatus. All that was decided by Wanser *v.* Hoos was that the proposed legislation affected the municipality and its citizens in other respects; the dissenting opinion being in the main expressive of the view that voting for local officers upon the same ticket with state and county officials was a mere change in machinery, while the majority opinion held that "it in no sense affected the machinery, powers or structure of the city government," but that it inaugurated a new policy, the limited operation of which could not be rested upon the basis of mere population.

Carrying these authoritative announcements of the law into the discussion immediately in hand the pertinent inquiry is whether the act under consideration is one that affects the structure or machinery of municipal government, or whether it operates upon the inhabitants or taxpayers in other respects. About this there cannot be two views. The object the legislature had in mind was to provide for the repaving of streets, and the sole novelty introduced by the legislation is that it throws the expense therefor wholly upon the general taxpayer to the relief of the abutting property-owner to the extent of the special benefits derived. To this situation the distinction made by Mr. Justice Depue in Wanser *v.* Hoos is entirely apposite, viz., that the result is not to alter or affect the structure or machinery of government, but to change an existing policy. The subject is, therefore, clearly one for judicial examination and if necessary for judicial control.

If cities of the second class exhibit special fitness for the imposition of the legislative scheme in question, it must be in respect either to the provision for the repaving of streets or in respect to the method of paying therefor. That neither of these objects can be attained by legislation based upon

population merely appears to have been repeatedly and expressly decided. In *Dobbins* v. *Northampton,* 21 *Vroom* 496, it was held that legislation with respect to roads and highways must rest upon some substantial difference between the class selected and the classes excluded. In *Dobbins* v. *Commissioners of Long Branch,* 30 *Id.* 146, it was decided that an act to pave and improve streets and highways in a borough commission fell under the constitutional inhibition for the like reason. The same result is indirectly but surely indicated in every adjudication upon the difference between special and general laws. After the adoption of the amendments of 1875, when this general question came before this court as one of first impression in the case of Van Riper *v.* Parsons, Chief Justice Beasley, in the elaboration of his exposition of the meaning and tests of a special law, took as his illustration of vicious lawmaking an attempt to legislate with respect to systems for laying out streets upon no other classification than that of mere population, and nothing that has been since decided has indicated that this *dictum* was not in accord with the judicial standard to be applied to such cases. If a yet more extreme illustration were sought it would be furnished by the present case, in which the burden of paying for the improvement of highways is shifted from the property-owner benefited to the general taxpayer for no other reason than that such highways were in cities holding an intermediate place in point of population.

That the power to issue bonds and to provide for the funding of special debts may not be conferred by legislation based upon nothing more pertinent than population seems to have been expressly decided in *Anderson* v. *City of Trenton,* 13 *Vroom* 486. In the opinion delivered in that case, Mr. Justice Dixon says: " The basis of classification is a minimum of population. The powers to be conferred by the statute concern the issue of bonds for the purpose of funding floating debts. I am unable to see any natural connection between the number of people in a city and its right to fund its floating debt." This case was decided upon this point alone, and

has been followed and cited in a long line of causes: *Hights-town* v. *Glenn*, 18 *Vroom* 105; *Randolph* v. *Wood*, 20 *Id.* 85; *Dobbins* v. *Northampton*, 21 *Id.* 498; *Clark* v. *Cape May*, 21 *Id.* 558; *Freeholders of Hudson* v. *Buck*, 22 *Id.* 155; *Wanser* v. *Hoos, supra.*

The question even in concrete form appears to be entirely settled.

The result reached is that the statute under review, by its terms, operates upon localities that are specified, but not classified in reference to the classification act. Hence it is unconstitutional and void.

If there exist any reasons for excluding this act from the constitutional prohibition against local laws they have not been brought to my notice, nor have I been able to discover them. It was said upon the argument and is repeated in the brief of counsel that cities of the first class are authorized in certain cases to create a fund to be applied to somewhat similar purposes, although not a single statute is cited to that effect. If counsel has in mind the legislation to be found in *Gen. Stat., pp.* 469, 470, 477, 479, or in *Pamph. L.* 1897, *p.* 239, it utterly fails to support his contention. These provisions all relate to license fees and to the creation of a fund for the temporary payment of debts contracted for street improvements, the ultimate assessment for which falls upon the abutting property-owner. There is nothing in these provisions to bring the present law within the case of *Bumsted* v. *Govern*, 18 *Vroom* 368; *S. C.*, 19 *Id.* 612.

Whether the inequality imposed by this act under color of classification brings it within the fourteenth amendment of the federal constitution was not raised by any reason filed and hence is not decided. The recent case of *Gulf, Colorado and Santa Fe Railroad Co.* v. *Ellis*, 165 *U. S.* 150, dealt extensively with this general subject.

The resolution brought up by this *certiorari* is set aside.