SAMUEL H. GREY, ATTORNEY-GENERAL OF NEW JERSEY, v. THE MAYOR AND CITY COUNCIL OF THE CITY OF DOVER.

Submitted March 28, 1898—Decided June 13, 1898.

1. The "mayor and city council of the city of Dover" is not authorized, under the provisions of an act entitled "An act authorizing any town, township or borough, or part thereof, containing a population exceeding five thousand inhabitants, to be incorporated as a city after a vote of the people, and providing for the government and powers of said cities," approved March 22d, 1895 (*Pamph. L., p.* 506), to exercise any of the rights, privileges, liberties and franchises of a municipal corporation in and over the territory which, under said act, is embraced within it, on the ground that the act is repugnant to article 4, section 7, paragraph 11, of the amended constitution of this state, which declares that the legislature shall not pass private, local or special laws regulating the internal affairs of towns and counties, and shall pass general laws for this purpose.

2. This act appertains as well to the regulation of the internal affairs of cities as to the mere structure and machinery of their government. The classification of cities authorized by this act depends entirely and merely upon population and territory, apart from any other characteristic, and as the legislation provided for their government has no natural relation to or connection with mere population and territory, the classification becomes of an artificial and illusory character, and therefore unconstitutional.

3. The provision in the first section of the act, that " none of the provisions of any general or special act relative to cities in this state shall apply to cities organized under this act unless the same shall be a supplement to this act, or such future act shall by its terms be made applicable to cities incorporated under this act," creates of itself a classification of cities obnoxious to the mandate of the constitution interdicting private, local or special laws for the regulation of the internal affairs of cities, and this provision of section 1 appearing to be in conformity with the intent of the legislature that it should be of force and operative as a part of this act, is, by reason of such legislative intent and by the reasonable construction of the act and the

vote and will of the people to whom the act and the incorporation under it were submitted for acceptance, inseparable from the other portions of the act, and therefore the whole act must fall as an invalid and unconstitutional exercise of legislative power.

4. Where a portion of a statute is unconstitutional, the other portions, or the residue, can only stand when such result is in accordance with the apparent legislative intention, and upon the question of the intention of the legislator the unconstitutional portion of the statute is to be regarded; and in order to have the residue of the statute to stand, the belief must be warranted that the legislature would have passed the statute as it would stand after the excision of the invalid provision had been made, otherwise the whole statute must fall; and in the consideration of the questions whether the excision can be made and in the construction of the statute, it is a presumption that it was the intention of the legislator that each and every part of the act should be effective.

On demurrer to plea to information in the nature of *quo warranto.*

Before Justices LIPPINCOTT, GUMMERE and LUDLOW.

For the demurrant, *Samuel H. Grey,* attorney-general, and *George T. Werts.*

For the defendant, *Joseph Coult.*

The opinion of the court was delivered by

LIPPINCOTT, J. This is an information in the nature of *quo warranto,* filed by the attorney-general *ex officio,* against the "mayor and city council of the city of Dover," commanding it to show by what warrant it claims to exercise, use and enjoy the certain liberties, privileges and franchises of a municipal corporation.

The information avers that the mayor and city council of the city of Dover hath used, and still doth use and exercise, without any warrant, charter, incorporation or legislative or other authority whatever, the liberty, privilege and franchise of being a body politic and corporate, in fact and in law, by the name and title of "the mayor and council of the city of

Dover," exercising municipal power and authority in and over a certain territory within the territorial limit of the township of Randolph, in the county of Morris, and that by such name and title, in fact and in law, exercises all the liberties, privileges and franchises of a municipal corporation over such territory, as duly incorporated under the act of the legislature of this state, entitled "An act authorizing any town, township or borough, or part thereof, containing a population exceeding five thousand inhabitants, to be incorporated as a city, after a vote of the people, and providing for the government and powers of said cities," approved March 25th, 1895, and the several supplements thereto and amendments thereof, all of which said liberties, privileges and franchises the said "the mayor and council of the city of Dover" hath usurped and still doth usurp.

To this information the defendant has filed a plea that from the 7th day of May, 1896, and from thence hitherto, it hath continuously and constantly exercised the rights, privileges, liberties and franchises of a municipal corporation as set forth in the information and over the territory therein described, and that they are lawfully exercised by virtue of the act of the legislature to which reference is made in the information. The plea avers that the vote of the inhabitants of said territory was taken in accordance with the act of 1895, at an election duly called and held on May 7th, 1896, for that purpose, under said act and acts amendatory thereto, approved respectively March 5th, 1896, and March 30th, 1896, the results of which were filed in the office of the secretary of state, and that such proceedings, under the act of 1895, are sufficient warrant for the defendant to exercise the rights, privileges, liberties and franchises of a municipal corporation, under said act of the legislature, over the territory described in the information.

The attorney-general has filed a demurrer to this plea, with proper specifications, and contends that the act of 1895, under which the defendant, according to the plea, was incorporated, is invalid, as being repugnant to article 4, section 7, para-

graph 11 of the amended constitution of the state, which declares that " the legislature shall not pass private, local or special laws * * * regulating the internal affairs of towns and counties," and " shall pass general laws for the cases enumerated in this paragraph."

From these pleadings it appears that the territorial limits of the defendant corporation are co-extensive with and the same as those of the town of Dover, which was a town corporate by the name of " the town of Dover," under and by virtue of an act entitled "An act to incorporate Dover," approved April 1st, 1869. *Pamph. L., p.* 1161.

The act of 1895 (*Pamph. L., p.* 506) provides a complete and an elaborate system of city government, both as to the structure as well as to powers conferred, and the regulation thereof.

The first section enacts " that the inhabitants of any town or borough, or of any township or part thereof, which had by the census of the United States taken in the year one thousand eight hundred and ninety, or which may have by any census hereafter taken under the authority of any act of congress, or of the legislature of this state, a population exceeding five thousand inhabitants, may become a body politic and corporate in fact and in law, by the name and title of ' the mayor and city council of ———— ' (specifying the name to be borne by such city), whenever at any special election called for that purpose, or at any town or charter meeting or election at which the question of incorporating *under this act* is submitted as hereinafter provided, it shall be so decided by a majority of the voters thereof voting at any such election ; *none of the provisions of any general or special act relative to cities in this state shall apply to cities organized under this act nor shall any such act hereafter enacted so apply, unless the same shall be a supplement to this act, or such future act shall by its terms be made applicable to cities incorporated under this act.*"

An examination of this act, both as to structure and government, shows an intention to create a distinct class of cities.

Its creation depends upon the number of inhabitants within the territory out of which the city is to be created. Its creation also depends upon the result of an election of the voters embraced in such territory. By its terms there must have existed in this territory a previous municipal organization of a town, borough or township. Under the provisions of the act it would seem that the new city could not be created from a city or a part of a city having a previous corporate existence as such. The term "town," neither in the title of the act or its body, can be interpreted to include a city having a previously-organized municipal government. I think, by its terms, that there must have existed previously a municipal organization of a town, borough or township in the restricted sense in which these terms are to be used. By section 10 of this act, whilst the cities incorporated under it contain between five and ten thousand inhabitants, the clerk of the city and many other of the officials must be elected by the legal voters. When the population has increased to ten thousand then the city clerk must be appointed by the city council, and the treasurer, chief of police, chief of the fire department and the receiver of taxes must be nominated by the mayor and confirmed by the council. By section 16 no person is eligible to hold or be elected to office under this act unless he shall have resided in the city for the period of at least two years. It would be a difficult task to so construe this section in order to provide officials of the city for the first two years of its existence. This defect may be said to have been cured by the act of 1896 providing for the first annual election. Under section 26, if at any time there be a tie vote in the city council, the mayor shall, upon the application in writing of a member of the council, attend the meeting, or call a special meeting, of the city council to consider the subject under discussion, and the mayor shall be entitled to vote upon such question. By this section, when the city has, or grows to have, a population exceeding ten thousand, then this provision shall not apply except in case of a tie vote upon the election of the chairman of the city council and of a

city clerk, and then only in case a tie vote shall again occur at the meeting at which the mayor shall be so present, in which case, after such tie shall be found to exist, he shall then give the casting vote.

By section 76, whilst the city does not contain a population exceeding twelve thousand, all the bonds authorized to be issued by the city shall not be issued unless the proposal for the same shall be first recommended by the mayor to the city council, and then be approved by a majority vote of the council, and then submitted to the voters of the city at an annual or special election, and a majority of the votes cast at such election shall have voted in favor thereof. When the city incorporated under this act contains, or grows to contain, a population exceeding twelve thousand, then the city shall have the like power and authority as to the issuance of bonds for any purposes as that conferred upon cities of the *second class* in this state by any general law now or hereafter applicable to such cities, the same to be issued in like manner as the same may be issued by such cities, or in the manner and form provided for the issuance of bonds or other obligations, or authorizing the issuance of the same under the provisions of this act. So far as this provision as to the issue of bonds is concerned the classification depends merely upon population.

Another section of this act provides for the removal of all officers of the city, whether elective by a vote of the people or appointive by a vote of two-thirds of all the members of the council, with a saving exception in favor of the members and officers of the board of education.

These provisions are special and not alone structural in their character. This is not alone an act establishing a local government, or rather a scheme of such government. It not only does this, but it also, and to an elaborate extent, provides for the regulation of the municipalities to be so constructed and for the exercise of all the powers of such municipalities in a special manner, applicable alone to the municipalities created under this act. It is not an act for

the creation alone of a city, but it is by the act created by a specific, particular method, and having conferred upon it the powers of a municipal government, to be exercised with particular limitations and in a particular manner. The basis of the classification is population merely, a population to be carved out of a particular territory and presenting no natural connection with the legislation applicable to its government, and in this respect the act can only be deemed special and apparently contrary to the interdict of the constitution. This law operates only in specified localities of the state, and some satisfactory reason must be found in order to exclude it from the constitutional prohibition against local laws. *Wanser* v. *Hoos*, 31 *Vroom* 482.

It does not deal with the mere machinery and structure under which municipal affairs are to be regulated. The mere population in this case cannot bear any relation to the particular subject of legislation. *McLaughlin* v. *Newark*, 29 *Vroom* 202.

The classifications thus adopted by the legislature as embraced in the express provisions of this legislation, do not appear to be based upon any substantial characteristics which render them the subject of such legislation.

In the instance as noted of distinction between the powers conferred upon the cities created under this act and those conferred upon cities already in existence under general and special laws, and performing functions of the same character, the classification would appear to be entirely artificial, and these distinctions, by this act, are so numerous and so interwoven with the framework of this act as not to be in any instance readily separable.

It has been decided in this court that no reason appears why the legislature may not confer on localities, as they grow and develop, new forms of local government, and that the transition from one form to another may be provided for in the act of incorporation and government of the class to which it is applicable. *State* v. *Borough of Clayton*, 24 *Vroom* 277. But this must be accomplished by legislation appropriate to

the class and naturally connected with the subject of the legislation. *Ibid.*

But upon the consideration of the other provisions of this act its invalidity clearly appears.

In section 1 of this act, already cited, after the provision for the creation of this class of municipalities upon the basis of population and character of territory to be embraced, and the provisions for an acceptance of the act by a vote of the people, it is, not as a proviso but as a substantial provision of the act, enacted that "none of the provisions of any general or special act relative to cities in this state shall apply to cities organized under this act, nor shall any act hereafter enacted so apply unless the same shall be a supplement to this act, or such future act shall by its terms be made applicable to cities incorporated under this act."

It has been conceded, as it could not be disputed, that if this provision is to be regarded as an inseparable part of this legislation that the whole act must fail as an invalid exercise of legislative power. This provision of the act, if it be given force and effect, renders the internal affairs of the class of cities created by this act entirely exempt from any existing general legislation affecting cities, notwithstanding the mandate of the constitution that only such laws shall be passed and applicable. No general act can hereafter be placed upon the statute-book affecting this class of cities, and every general act hereafter passed shall be construed as not affecting such cities; and besides, the legislature, in relation to them, is forbidden to exercise the legislative power unless it be done in a form which is absolutely contrary to the constitutional interdict.

In no case is it to be assumed that a statute is unconstitutional. The constitutional inhibition is to be considered in relation to the statute, and before the statute can be declared invalid it must clearly appear to be so, but the classification here created is one for which no reason can be found to sustain. The classification is one which is created merely by the enactment itself and has no substantial foundation. No

condition or situation is found extrinsically or embodied in the act which points out this class of cities as being one to which the general laws now existing or which hereafter may be enacted cannot be naturally applied. Upon the application of the principle embodied in the first section of this act, there could be just as many classifications created as there are cities already in existence or as can be hereafter established. An enactment of this character fixes not only its machinery, but its internal affairs, impregnable to the application of general laws however appropriate such application might be, and fixes that condition upon the city forever. Each city would stand entirely alone, subject only to its particular corporate enactment and exempt entirely from the general policy of this state or its laws. Every city thus created can have its *status* unalterably fixed and determined. The prohibition in the constitution against the diversity of laws applicable to the government of cities becomes valueless. The statute nullifies the constitutional provision. This act contains provisions for the regulation of the internal affairs of the cities of this class entirely distinct and different from those enacted by general laws for the government of other cities of like character as to population and territory. It stands as a scheme for the government of cities apart from the scheme imposed upon other cities. The regulation of the internal affairs differs materially from those affecting other cities operating under general or special laws. If this situation is unalterable, or if no general laws can ever become applicable, the constitutional provision in question might as well be erased from our system of municipal government. The first section of this statute might as well have enacted that this class of cities should only be governed by special laws, for this is the only meaning which can be given to it.

In *Van Riper* v. *Parsons*, 11 *Vroom* 1, 5, 6, Chief Justice Beasley, speaking upon this subject, said : " Experience had conclusively shown that the system itself was vicious that permitted a city or other political district to be governed by laws applicable to it alone. *   *   * These and others of a

similar cast were the mischiefs that the constitutional supplement in question was intended to eradicate. * * * In short, in my opinion, the clause in question seems to have been provided with the intention to require that for the future all legislative regulation of the internal affairs of cities should be the creations whenever practicable of general laws framed for the purpose. This is the domain from which special and local legislation is utterly excluded, whenever the legislative end can be effected by a general law." The act of 1895 presents not alone an act establishing a scheme of local government, but by it are created regulations for its internal affairs, distinct and independent of other cities, and having no effect upon them whatever. It appertains not merely to the structures of the contemplated incorporation, but goes much farther and confers rights, liberties and privileges, and by the restrictive provision in section 1 establishes a class similar in all respects to other cities, standing alone so far as the legislation by which it is created is concerned, and absolutely as a class impregnable to the effect of general laws. Such a classification, it is conceded, is based upon no substantial difference, and its characteristics must be considered as illusive. It would appear clearly that this provision was inserted in this act with the intention of eluding the constitutional inhibition, and it undoubtedly does so. Whether with such intention or not, if the result be the same, the same consequence of its invalidity follows. *State* v. *Borough of Clayton,* 24 *Vroom* 277.

These principles have been enunciated in so many cases in this state as to be at this time entirely settled. *State* v. *Clayton, supra; Foley* v. *Hoboken,* 32 *Vroom* 478 ; *Wanser* v. *Hoos, supra.*

It is well conceded by the defendant that the classification thus created is one which, under the fundamental law, cannot be sustained, and that unless this provision in the statute can be eliminated the whole act must fall as an unwarranted exercise of legislative power.

And this brings us to the only contention made by the defendant to sustain this act, and that is that this provision is

separable from the other provisions of the act, and therefore the remainder of the act can be sustained as a valid exercise of legislative power, and this contention is based upon the ground that the statute without this provision furnishes a complete scheme of city government and operative as such.

But this contention cannot be allowed to prevail. It is clear to my mind that this provision of the act is an inseparable part of the entire statute. It is the foundation upon which this municipal corporation is erected, and if it be taken away the structure of government as well as its regulation must fall. This provision of this first section cannot be eliminated without a disregard of the intention of the legislator. It cannot be eliminated without a disregard of the expressed will of the people upon whom devolved the duty of an acceptance of the incorporation under the act.

Whilst the principle is well established that if an invalid portion of a statute can be separated from the rest, and if after separation and excision be made there remains a complete, intelligent and valid statute capable of being executed, and conforming to the general intent and purpose of the legislature as shown in the act, it will not be adjudged unconstitutional *in toto*, but sustained to that extent. *Black Const. L.*, § 64; *Endlich Int. Stat., p.* 757, § 538; *Johnson* v. *State*, 30 *Vroom* 535; *Poindexter* v. *Greenhow*, 114 *U. S.* 270, 304.

But this elimination must be made without violating general rules applicable to the construction of statutes, and it must be done in conformity with the general intent of the legislature. Before it is done the court must be able to see and declare that the eliminated provision is distinctly severable, and that the intention of the legislature was that the part pronounced valid should be enforced, although the other part should fail; to hold otherwise would be to substitute for the law intended by the legislature one which they might never have been willing by itself to enact. *Poindexter* v. *Greenhow, supra; Sedgw. Const. Lim.* (2d ed.) 409. If the different parts of the act are so intimately connected with and dependent upon each other as to warrant a belief that

the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not have passed the residue independently, and some parts are uncon- stitutional, all the provisions which are thus interdependent must fail. *Johnson* v. *State, supra.*

An examination of this act will show the entire uselessness of an endeavor to preserve any portion of it as a general law for the regulation of the internal affairs of cities. In the first place, effect must be given to the fact that this provision was included in this act and was intended to have an effect, and an excision of it would be a disregard of the will of the legislature. It will be noticed that this act, in all its parts, was to be accepted by the inhabitants of the incorporated territory. Before an incorporation could be effected the inhabitants were bound to vote for such incorporation *under this act* and according to its provisions. It is to be presumed that at such an election, either for or against an incorpora- tion, this provision, which preserved it from any interference or further regulation by general laws, had its effect and was intended by the legislator to have a favorable effect. How can it be said now, that if this provision had not been con- tained in the act, that incorporation under it would have been adopted by the voters? It must be assumed that the argu- ment that when once incorporated under this act the city thus formed would be beyond the reach of future legislation, was far-reaching in its effect upon the voter. It must, as it seems to me, be assumed that this very favorable provision of this statute induced the adoption of the incorporation. It would be a dangerous assumption that it had no effect upon the acceptance of the incorporation, and therefore the court must cut it out of the law and leave the balance to stand against the expressed will of those who created the incorporation. The city would then be under regulations which neither were enacted by the legislature nor adopted by the voters, to whom, in accordance with the act, it was submitted. It was the possession of the regulations, powers and franchises unalter- ably fixed by this act which gave rise to the incorporation,

and it would do violence to reason to say that whether or not the result would have been the same. That which the voter considered the fundamental framework of this mode of government and which controlled him in the exercise of the right of adoption, the court will not now subtract and judicially determine that the adoption of the charter would have occurred just the same. The presumption must be that every part of the act, including this provision, was given effect by the voter. He was not applying the rule of excision of a portion of this statute, in order that his vote might have a legal effect. The statute presented to him a condition or *status*, and he was requested to express his opinion whether he would accept it or not, and after its acceptance it cannot be contended that any less than the whole enactment was accepted and its parts inseparable as a scheme of local government, both as to structure and regulation.

It cannot be concluded that the legislature would have enacted this scheme for the creation and government of this class of cities had this provision not been inserted. It is to be presumed that the legislature intended that every part of the act should be operative and that this particular limitation should not be disregarded. It thoroughly characterizes the class of cities created. As the enactment stands without this limitation, the use for the statute does not exist. This provision was made a vital part of the statute, without which the whole framework of this class of incorporations fails. The statute creates a particular class of cities. As an act of creation merely the legislation might be sustained, but the powers conferred as to government and the regulation of the internal affairs are rendered by this provision separate and distinct from any other class however similarly situated they might be in their substantial characteristics, and that this class might always stand alone so far as legislation is concerned. This provision attaches itself not only to the act and intention of the voter in the adoption of the incorporation, but by the legislature intended to attach itself as a substantial part of the statute to every regulation of its internal

affairs. No regulation could be changed by any general law. The scheme adopted by the legislature and presented to the people for their acceptance, was a scheme dependent upon the enforcement or applicability of the obnoxious provision. The very title to the act provided that it shall be operative only upon a vote of the people, and the act fully, carefully and elaborately provides for the government of this class of cities in order that there should be no defect in the application of the limitation. The legislature certainly intended that the people in voting to accept this scheme should avail themselves of its exclusive benefits and privileges. The city could only become incorporated by such vote, "*under the provisions of this act.*" The absolution created by this peculiar provision of this act is the distinguishing feature of the law around which all the others are grouped and to which all others are made subsidiary, and to so construe or interpret this statute without regard to it would be to utterly disregard the manifest intention of the legislature.

The search will be in vain to ascertain from the act any reason for disregarding this provision in giving construction and force to the act. Without this obnoxious provision every regulation of the internal affairs of the cities can be changed at will by the legislature. If this provision had any effect, every power granted was clothed with it. This is its effect upon all the other provisions of the act. In no instance can the raiment be changed. This provision of the act is in substance the same as the other provisions so far as the object goes, and that is the purpose to fix unalterably upon this class of cities a certain form of government. The object of the statute was to create a certain class of cities. This class was dependent upon this provision for the powers granted and existing and those under which the cities were to be governed and regulated in the future. Such a provision must, in view of the intention of the legislature that the whole act should have effect, be deemed to be inseparable from the other portions of the act. This provision as it appears in the act is such that the other parts of the act are mutually connected

with it and dependent upon it, and·it warrants the belief that the legislature intended all the parts of ·this act as a whole. The statute would not have been passed at all except as an entirety. The purpose of the legislature will be defeated if this act should be held valid in some and void in other respects. Inseparably connected in substance with every other provision of the act, there can be no jurisdiction to excise any portion of it. *Cooley Const. Lim.* (*6th ed.*) 209.

It was plainly the legislative intent that the objectionable clause and all other provisions of this act should be taken as a whole. This subject is discussed and determined in *Attorney-General* v. *Anglesea*, 29 *Vroom* 372. In that ·case the legislation concerned was, first, "An act for the formation and government of boroughs," approved March 12th, 1890 (*Pamph. L., p.* 58), under which an incorporation of the borough was claimed to have existed; and secondly, "An act to repeal the act of March 12th, 1890" (*Pamph. L.* 1891, *p.* 11), by which the act of March 12th, 1890, was expressly repealed, with a proviso of a saving clause as to corporations already organized under the repealed act. The saving clause being presumably bad, the question arose whether it was inseparable from the other portion of the act, and upon this question of the legislative intent, Mr. Justice Garrison, in delivering the opinion of the court, said : " Where a part of a statute is unconstitutional, the remaining part may stand only when it will operate in accordance with the apparent legislative intention, and a provision that is unconstitutional and· ineffectual as a law is yet to be regarded upon the question of the intention of the lawmaker. In the present case there is nothing to warrant the belief that the legislature would have passed the residue of this statute as it will stand after the excision of the proviso ; indeed, the contrary is perfectly obvious. The effect, therefore, of holding the proviso bad would not be to repeal the act of 1890, but to eliminate from the statute-book the repealer itself. Pursue, therefore, what course we may, we must ultimately consider whether the act of 1890 is a valid expression of legislative power."

There is nothing in this statute which justifies a judicial determination that the legislature would have passed this statute if the vicious provision had not existed in the enactment. Taking the act as it stands, this clause of the statute is entirely interdependent with all other provisions of the act.

As this provision is obnoxious to the constitutional provision the whole act must fall as in violation of article 4, section 7, paragraph 11 of the constitution, that the legislature shall not pass private, local or special laws regulating the internal affairs of towns and counties, but shall pass general laws for such purposes.

The demurrer to the plea must be sustained, and judgment must pass upon the information in favor of the attorney-general and against the defendant.