WILLIAM O. ALLISON, PROSECUTOR, PLAINTIFF IN ERROR, v. CHARLES CORKER, ASSESSOR, &c., DEFENDANT IN ERROR.

Argued December 5, 1901—Decided June 16, 1902.

1. A statute so framed as to be wholly or in part unconstitutional, but having a title expressing a constitutional object may, by amendatory legislation, be rendered constitutional, without having recourse to an enactment independent throughout its provisions.
2. Any power or powers of local government in townships may, at the discretion of the legislature, be exercised in districts; and the fixing of the number and boundaries of the districts may constitutionally be delegated to the township committee.
3. In order to effectuate such power or powers, the legislature, constitutionally, may authorize the legal voters of each district to make appropriations of money to be raised by taxation and expended within the district. The district becomes for the purposes of the legislation a political division of the state.

4. "An act concerning public roads and parks and creating boards for the control and management of the same," approved March 1st, 1893 (*Pamph. L., p.* 69; *Gen. Stat., p.* 2951), as amended and supplemented March 17th, 1896 (*Pamph. L., p.* 80), is constitutional as to roads, but ineffectual as to parks.

5. "An act authorizing the division of townships into street lighting districts and the erection and maintenance of street lights therein and the election of street light commissioners in said district," passed May 25th, 1894 (*Pamph. L., p.* 540; *Gen. Stat., p.* 3669), as amended March 25th, 1896 (*Pamph. L., p.* 132), is constitutional.

On error to the Supreme Court. The opinion of that court is reported in 37 *Vroom* 182.

For the plaintiff in error, *George R. Dutton* and *Charles L. Corbin.*

For the defendant in error, *Peter W. Stagg.*

The opinion of the court was delivered by

COLLINS, J. In this case the Supreme Court affirmed, upon *certiorari,* road and lamp taxes assessed in 1897 and 1898 upon lands of the prosecutor in the township of Ridgefield, in the county of Bergen, and set aside a park tax assessed in 1897 upon the same lands. The present writ of error is in review of such affirmance. The foundation of the road and park taxes is an act entitled "An act concerning public roads and parks and creating boards for the control and management of the same," approved March 1st, 1893 (*Pamph. L., p.* 69; *Gen. Stat., p.* 2951), as amended and supplemented by an act approved March 17th, 1896 (*Pamph. L., p.* 80), and accepted in said township. The act of 1893 provided that the township committee of any township in the state might cause it to be divided into convenient road districts, and, in such case, should submit the question of the acceptance or rejection of the act to the legal voters of the township, and that, after acceptance, such committee should call an assembly of the freeholders of each district to elect a suitable person, who should be a legal voter in the township and

a freeholder and resident in such district, as a road commissioner of the district for a term of three years. The commissioners elected and their successors were constituted a board of commissioners to be known as a "public road board" of the township. At the same meeting and annually thereafter the assembled freeholders were authorized to vote to raise money by taxation within the district for the making, maintaining and repairing of the public highways within the district, and for the keeping in repair and improving any public parks in the township. Each commissioner was given the powers, within the limits of his district, of the overseers of highways, and to the board was committed the duties of the township committee over highways and parks. Powers of condemnation and improvement and assessment of consequent benefits were also conferred by the act, but those are not involved in this case. The taxes voted in each district were to be assessed and collected by the township assessor and collector. This statute was, by the Supreme Court, in 1894, held unconstitutional, in *Allison* v. *Blake,* 28 *Vroom* 6, because the election of the commissioners was limited to the freeholders of the districts. The act of 1896, by amendment of certain sections, vested the power to elect commissioners and to vote taxes in the legal voters of the respective districts, instead of in the freeholders of the districts, and authorized the township committee, with the consent of the public road board, to increase or diminish the number or change the boundaries of the districts. The foundation of the lamp tax is an act entitled "An act authorizing the division of townships into street lighting districts and the erection and maintenance of street lights therein, and the election of street light commissioners in said district," passed May 25th, 1894 (*Pamph. L., p.* 540; *Gen. Stat., p.* 3669, § 449), as amended March 25th, 1896. *Pamph. L., p.* 132. The act of 1894 authorized the township committee of any township in any county of the second and third class in the state to set off and divide the said township into districts, to be designated by numbers, and to alter the same from time to time, and, by resolution, to define and declare the limits, boundaries and numbers of

the districts; and it was provided that the same being so defined and declared should be deemed and taken as street lighting districts, each of which should be a body corporate, under the name of "Street Lighting District No. ——," and have power to sue and be sued, make and use a common seal, and all other corporate powers necessary for the carrying out the powers conferred by the act. It was further provided that on the first Tuesday of June of each year the legal voters of such district should be authorized to meet for the purpose of electing three commissioners of the district, and to determine, by ballot, by the vote of the majority of those present and voting, a sum of money to be raised and expended within the district for the ensuing year for the erection and maintenance of street lights. It was further provided that the sum so appropriated should be certified to the commissioners, who should give notice to the township assessor to assess the same upon the taxable property within the district, and that the taxes so assessed should be collected by the township collector and paid over to the commissioners of the district, who were empowered to expend the same for the purpose of lighting the streets within the district. The act of 1896, by amendment, eliminated the restriction of the original act to townships in particular counties.

We agree that the act of 1893 was unconstitutional, for the reason given in the Supreme Court in the case of *Allison* v. *Blake, ubi supra.* In *Smith* v. *Howell,* 31 *Vroom* 384, in an opinion in the Supreme Court upholding the act of 1894 as amended, it was rightly conceded that the original act was unconstitutional, but we do not approve the reason given for that concession. Such reason was that the title of the act could not support legislation not extending to all townships. The case of *Beverly* v. *Waln,* 28 *Id.* 143, was cited as authority, but in that case the object expressed in the title of the statute involved was legislation respecting "the cities of this state," a phraseology necessarily extending to all such cities, while the enactment was not so extensive. The opinion delivered in the cause, which seems to have been misleading by reason of a terseness otherwise admirable, has been prop-

erly explained in *Johnson* v. *Asbury Park,* 31 *Id.* 427, 431,
and *Kennedy* v. *Belmar,* 32 *Id.* 20, 25. The real reason of
unconstitutionality of the act of 1894 was that the townships
of the specified counties had no characteristics to differentiate
them from townships of other counties. The act therefore
was in violation of article 4, section 7, paragraph 11 of the
constitution, prohibiting private, local or special laws regu-
lating the internal affairs of towns and counties.

It is contended for the plaintiff in error that, notwith-
standing the amendments of 1896, the legislation recited is
still unconstitutional. A preliminary question raised is of
the validity of the two acts of 1896 independently considered.
It is argued that as the original statutes were void they could
not be amended. For the purposes of this case it may be con-
ceded that the unconstitutional provisions referred to were
inseparable from the legislative intent, so that in each case
the entire statute was unconstitutional. The question raised
therefore is fairly presented.

The argument is that an unconstitutional statute is a
nullity. Granting this, it does not follow that it may not
be imported into valid legislation by appropriate reference.
It is entirely within the legislative power to give effect to
documents without their full recital. Statutes validating
agreements of lease, merger or consolidation of railroad cor-
porations are usually cast in that form—*e. g., Pamph. L.*
1871, *pp.* 946, 1093; *Id.* 1872, *p.* 567.

The matter is one purely of identification. Surely nothing
can be more definite than a reference to a document that has
been regularly promulgated as a public statute. In *Mortland*
v. *Christian,* 23 *Vroom* 521, it was held by this court that
a statute providing for election of chosen freeholders of a
county from assembly districts created under previous legisla-
tion was valid whether such districts could be constitutionally
created or not. But I am prepared to go further and hold
that an unconstitutional statute is nevertheless a statute—
that is, a legislative act. Such a statute is commonly spoken
of as void. I should prefer to call it unenforceable because
in conflict with a paramount law. If properly to be called·

void, it is only so with reference to claims based upon it. Neither of the three great departments to which the constitution has committed government by the people can encroach upon the domain of another. The function of the judicial department, with respect to legislation deemed unconstitutional, is not exercised *in rem,* but always *in personam.* The Supreme Court cannot set aside a statute as it can a municipal ordinance. It simply ignores statutes deemed unconstitutional. For many purposes an unconstitutional statute may influence judicial judgment, where, for example, under color of it, private or public action has been taken. An unconstitutional statute is not merely blank paper. The solemn act of the legislature is a fact to be reckoned with. Nowhere has power been vested to expunge it or remove it from its proper place among statutes.

The plaintiff in error, in support of his contention, refers us to this injunction of the constitution: "No law shall be revived or amended by reference to its title only, but the act revived or the section or sections amended shall be inserted at length." *Art.* 4, § 7, ¶ 4. The provision as to revival has no bearing on the present case. The claim is that, under the provision as to amendment, where a statute is wholly unconstitutional, an amendment of the section or sections that make it so leaves the other sections unaffected unless inserted at length in the new statute, and that they should be considered as if never enacted, so that the new legislation is incomplete and ineffectual. This is a strained and unnatural construction of the provision. To me it seems very plain that the two documents are to be read together, and if, when so read, a constitutional enactment appears, the courts must give it effect. Of course, the other provision of the same paragraph of the constitution, that the object of every law shall be expressed in its title, must be considered, and I concede that a statute defective in that regard cannot be made constitutional by an amendment of its title in a statute similarly defective. For example, if "An act respecting wills" should purport to treat of transactions *inter vivos,* it could not, *quoad hoc,* be given effect by legislation enacted

simply under the title "An act to amend an act respecting wills," even though the enactment professed to amend the title of the original statute. But where the title of a statute is comprehensive of the legislation, both original and amendatory, I see no constitutional or other objection to perfecting, by amendment, that which was originally defective. It is absurd to say that inquirers need pay no attention to a bill introduced as an amendment to a cited act, with such a .comprehensive title, simply because they conceive that the original act was unconstitutional.

Inferentially the point has already been ruled in this court. In *Rader* v. *Township of Union,* 10 *Vroom* 509, an act of the legislature was held unconstitutional because its object was not expressed in its title; but an "act to repeal" that statute was held efficacious to compel payment of claims incurred under it. The provisions for that purpose were adjudged to be incidental to an object expressed by a title of repealer alone, and were upheld, though intelligible only by reference back to the statute repealed. The opinion was by Chief Justice Beasley and was delivered on demurrer to a declaration in a suit on such claims. In *Township of Union* v. *Rader,* 12 *Id.* 617, a judgment in the action, recovered on the merits, was unanimously affirmed. The opinion of this court was read by Chancellor Runyon, who said (at *p.* 621) : "The Supreme Court, in *Rader* v. *Township Committee,* 10 *Vroom* 509, passed upon all the questions presented here, except that which relates to the character of the debts. I concur in the views of that court in regard to the questions dealt with in the opinion in that case." If an unconstitutional statute is a nullity, no such legislation as that sustained in the case cited could have been constitutionally possible under a mere title of supererogative repeal. On the other hand, if, as adjudged, . inquirers should infer merely from a title of proposed repealer of an unconstitutional statute that proper equitable relief to those who have relied upon it may be afforded in the repealing statute, *a fortiori* should it be held that they should infer from a title of amendment of such a statute that it is proposed to remove its defects.

A view opposite to that now taken would lead to much confusion. Many statutes are of doubtful constitutionality. To require that the removal of such a doubt should, at the peril of those interested, require an entirely new enactment, involving an express or implied repealer of the doubtful legislation, would be most unreasonable.

After careful consideration of the subject I have reached the conclusion that a statute so framed as to be wholly or in part unconstitutional, but having a title expressing a constitutional object, may, by amendatory legislation, be rendered constitutional without having recourse to an enactment independent throughout its provisions.

I come therefore to the question of the validity of the amended legislation.

Under our constitution the power of the legislature over the administration of local government is unlimited, except by the inhibition, above cited, of private, local or special laws regulating the internal affairs of towns and counties. Road districts, like school districts, are well-recognized local governmental agencies, and may be either corporate or *quasi* corporate. *Dill. Mun. Corp.* (*1st ed.*), § 10. Districts for street lighting purposes, though less common, are equally *intra vires.* · Powers of local government may be divided and subdivided at the legislative will, and different agencies may exercise powers separately committed within the same territory. So far there can be no dispute. The requirement of generality is met in the legislation before us by its extension to all townships. *Hermann* v. *Guttenberg,* 34 *Vroom* 616. The condition of popular acceptance imposed as to road districts is valid. *In re Cleveland,* 23 *Id.* 188.

The only arguable objections are two, which are common to both statutory schemes, and have been strongly urged upon us:

1. *That the vesting in the township committees of the function of dividing the township into districts for the respective legislative purposes is an unwarrantable delegation of power.*

It is assumed that authority to define the districts is tantamount to authority to create them. But this is clearly not so.

The difference may be illustrated by familiar examples. The general act for the formation of boroughs, approved April 5th, 1878 (*Gen. Stat., p.* 179), was declared constitutional by the Supreme Court, in *State* v. *Borough of Clayton,* 24 *Vroom* 277. For nearly twenty years it formed the fundamental law under which scores of municipalities were organized, and is even yet the source of their existence, although now governed by a statute embracing all boroughs. *Pamph. L.* 1897, *p.* 285. This act of 1878, on certain conditions, gave authority to the owners of one-tenth of the taxable real estate within limits fixed by themselves to set in motion proceedings for the erection of a borough, embracing that territory, by consent of the majority of the legal voters therein. "An act providing for the incorporation of cities," approved March 22d, 1895 (*Gen. Stat., p.* 785), authorized township committees, on petition of fifty resident freeholders, suggesting a district for a city, to enlarge or diminish its area and to submit the question of incorporation as a city of the district thus designated to the legal voters thereof. In *Stout* v. *Glen Ridge,* 30 *Vroom* 201, in this court, the validity of this legislation was taken for granted. The history of municipal creation in this state and elsewhere abounds in like instances of what may be termed delegation of legislative power to define territorial limits. The case is analogous to that presented by general laws providing for private corporations. The designated number of persons, by signing a certificate in compliance with the particular statute invoked, become a body corporate. The power to be a corporation is conferred by the legislature, but is inoperative until recipients are provided.

The grant of power to commissioners appointed by mayors to fix the number and lines of city wards for general municipal purposes has been upheld by this court, in *McLaughlin* v. *Newark,* 29 *Vroom* 202. There is no reason why a representative township committee should not be selected as an appropriate body to fix the number and lines of districts for legislative purposes more limited.

In this state, from a very early day, the township com-

mittees have been authorized to divide the townships into road districts. *Pat. L., p.* 325; *Gen. Stat., p.* 2817, § 52. In 1846 (*Pamph. L., p.* 164) the right to divide townships into convenient school districts was vested in a town superintendent of schools, to be elected by the people, and a district composed of parts of two townships, even if in different counties, might be established by the joint action of their superintendents. This law subsisted until 1867 (*Pamph. L., p.* 360), when the power was transferred to a county superintendent of schools, and thus continued until the School law of 1894 consolidated into one all the school districts of a township, except cities, boroughs and incorporated towns, each of which was made a distinct district. *Gen. Stat., p.* 3059, *pl.* 246; *Id., p.* 3061, *pl.* 257. The validity of this legislation, conformable, as it was, to that of many other states, has never been challenged, and, in my judgment, is unquestionable.

The logical result of this train of reasoning is that the road districts and street lighting districts now in question were constitutionally established.

The other objection is:

2. *That only to the political divisions of the state can the power to raise money by taxation be committed, and that the districts in question are not such.*

Granted the major premise, I cannot concede the minor one. Mr. Justice Depue, speaking for this court in *Township of Bernards* v. *Allen,* 32 *Vroom* 228, 236, said: "The legislature, in the exercise of its sovereign power, may confer upon the minor political subdivisions of the state (which are merely instrumentalities for the better administration of the government in matters of local concern) power to impose and levy taxes, rates and assessments to provide the revenue by which municipal expenses are borne and debts and liabilities paid, upon the principle that for local purposes the local authorities are the representatives of the people. The powers conferred on boards of chosen freeholders in the counties and upon other political subdivisions, *such as* cities, towns, townships, &c., are *instances* in which this legislative power has been

conferred upon minor subdivisions of the state." It is plain that the learned judge never meant to limit the range of subdivision. That matter must be one of legislative discretion, as he himself declared in *State, ex rel. Trustees, &c.,* v. *Township Committee of Readington,* 7 *Id.* 66. A borough or other municipality may have its sphere of taxation, and yet be subject in other respects to the township of which, for many purposes, it remains a part. *State* v. *Troth,* 5 *Id.* 377; *S. C.,* 7 *Id.* 422. Improvement commissioners may lawfully tax property. *State, Hoey, pros.,* v. *Collector of Ocean Township,* 10 *Id.* 75; *Auryansen* v. *Hackensack Improvement Commissioners,* 16 *Id.* 113. The narrowness of scope of the powers conferred on the governmental agency is not the test. *Id.* A single governmental power carries with it, *pro tanto,* all the essential elements of sovereignty.

In *State, Lydecker, pros.,* v. *Englewood,* 12 *Vroom* 154, 157, Mr. Justice Dixon thus states the "distinctive marks" of political divisions: "That they embrace a certain territory and its inhabitants, organized for the public advantage and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions, and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately within their territory for the peculiar benefit of the people there residing."

Applying the test suggested, which seems a proper one, the legislation in question amply fulfills it. The policy of multiplying governmental agencies and subdividing powers is, with much reason, attacked by the plaintiff in error; but that consideration has not been committed to the judicial department of our government. The courts, in such matters, can only look at the question of the legislative power.

On the question of such power there is no decision of this court adverse to the views above expressed, and most of the rulings, if not the *dicta,* in the Supreme Court are consistent with such views. In *Allison* v. *Blake, ubi supra,* Chief Justice Beasley suggests a doubt of the legal feasibility of com-

mitting to freeholders the executive powers of the act, but he does not, even remotely, intimate any difficulty inhering in the creation of road districts or the vesting in them of the power of taxation. The doubt he does suggest must be resolved in favor of the power to require a property qualification in public officials. 19 *Am. & Eng. Encycl. L.* 406.

In *McClosky* v. *Chamberlain,* 8 *Vroom* 388, the essential element, in a sustainable political division, of the popular voice of the inhabitants of the territory was lacking in the drainage districts designated by the statute held invalid, and the tax imposed was an arbitrary one. In *Baldwin* v. *Fuller,* 10 *Id.* 576; *affirmed,* 11 *Id.* 615; *Lydecker* v. *Englewood,* 12 *Id.* 154; *Morgan* v. *Elizabeth,* 15 *Id.* 571, and *Howell* v. *Millville,* 31 *Id.* 95, there were the same substantial defects in the legislation involved or criticised. In Baldwin *v.* Fuller, Mr. Justice Van Syckel, in answer to the supposed parallel of a school district, very aptly distinguished that institution. He said: "It is a district incorporated for an object affecting only those residing in it. They have absolute control of the question whether money shall be raised, and the facilities it affords for acquiring an education are limited to those upon whom the burden is cast." All the considerations mentioned apply with full force to the road districts and lamp districts now in controversy. The deliverance of Mr. Justice Lippincott, in *Carter* v. *Wade,* 30 *Id.* 119, was mere *dictum,* for the decision of the cause was rightly rested on the implied repeal of the statute impugned. The *only* case that presents features at all like those now being considered is *Peck* v. *Raritan Township,* 23 *Id.* 319, but a critical examination will show that the statute there condemned is clearly distinguishable from those now *sub judice.* Mr. Justice Garrison, who participated in the decision, evidently found it no barrier to the result reached by the same court, speaking through him, in *Smith* v. *Howell,* 31 *Id.* 384, where the amended Street Lighting District act now challenged was upheld, and in the judgment at present under review. It is true that the statute held unconstitutional in Peck *v.* Raritan did leave to the legal voters of the respective lamp districts authorized the fixing of the

sum to be therein raised by taxation; but it was nevertheless held that they were not political divisions. Mr. Justice Magie, who spoke for the court, after conceding that dual government with distinct functions may co-exist in the same territory, and that all that is necessary, in order to make an organization included within a township a political division, is that it shall have a public character and be endowed with some powers of local government, goes on to state the reasons that satisfy him that no such organization was designed to be established by the act then before the court. The difference from that now involved is very striking. He says: "The district is not given power to elect officers to act for it; it is not given a corporate name nor corporate authority even to contract for the erection and maintaining of the street lamps, and, while the voters therein are authorized to determine the amount to be raised for street lighting, the money voted is raised and expended by the township officers who represent the township. It is clearly implied, from the terms of the act, that the township committee shall determine what streets shall be lighted, where the street lamps shall be erected and how long they shall be maintained. In the disposition of the money raised the district has no voice. In respect, therefore, to this function of local government—the lighting of streets—the district is not given a separate and independent existence, nor endowed with any power except as a part of the township. It is not designed to become a political corporation or division of the state, such as that considered in *Auryansen* v. *Hackensack, ubi supra*." The legislation now being considered presents most, if not all, of the features thus noted as absent from that there involved. I am satisfied that it was the legislative design to constitute the road districts and street lighting districts in question political divisions for the purpose of the exercise therein of the governmental powers conferred and of incidental taxation, and that such design was thereby accomplished.

The determination of the Supreme Court in the present case therefore was right, but, doubtless through inadvertence, there is an error in the judgment. The land of the prosecutor

was sold for the taxes of 1897, and his writ directly attacked the sale. If the park tax was illegal, as declared by the court, the sale that included it was also illegal. *Hopper* v. *Executors of Malleson,* 1 *C. E. Gr.* 382; *State, Dixon, pros.,* v. *Jersey City,* 8 *Vroom* 39; approved in this court, *Pugh* v. *Commissioners of Sinking Fund,* 24 *Id.* 629, 631. It was admitted by counsel for the defendants in error that the park tax was illegal, and it plainly was so, for the reason that the provisions of the act of 1893 were too meagre with respect to parks to be effectual, and the expenditure of money raised for parks was not limited to the road district voting it, but was made general for the township.

So much of the judgment of the Supreme Court as affirms the sale of the lands of the plaintiff in error for the taxes of 1897 should be reversed; and in all other respects such judgment should be affirmed.

In the determination of this case the following questions therein arising were submitted to the vote of the court:

*First.* Can an unconstitutional act be amended by a supplement passed by a subsequent legislature and the vice in the original act be thereby removed?

*Aye*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, HENDRICKSON, KRUEGER, ADAMS, VREDENBURGH, VOORHEES. 11.

*Nay*—PITNEY, VROOM. 2.

*Second.* Is the Lamp act of 1894 as amended by the supplement of 1896 constitutional?

*Aye*—DIXON, COLLINS, FORT, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES. 8.

*Nay*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, HENDRICKSON, PITNEY, VROOM. 6.

*Third.* Is the Road act of 1893 as amended by the act of 1896 constitutional?

*Aye*—THE CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES. 10.

*Nay*—THE CHANCELLOR, HENDRICKSON, PITNEY, VROOM.  4.

*Fourth.* Is a tax sale which included an illegal tax with legal taxes valid?

*Aye*—None.

*Nay*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, HENDRICKSON, PITNEY, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.