FRANK J. KENNEDY *vs.* MAYOR OF PAWTUCKET *et al.*

PROVIDENCE—OCTOBER 15, 1902.

PRESENT : Stiness, C. J., Tillinghast, Wilbur, Rogers, Douglas, Dubois, and Blodgett, JJ.

(1) *Municipal Corporations.   Delegation of Legislative Power.   Legislative and Ministerial Acts.   Constitutional Law.   Equity.*

Pub. Laws cap. 1018, of 1902, provided for the appointment of three commissioners to divide the city of Pawtucket into not more than seven

wards, in such manner as to secure, as nearly as might be, an equal number of electors in each ward, having regard to the number of inhabitants therein.    The commissioners were also directed to divide each ward into a convenient number of voting-districts, and to file a map of such redivision in the city clerk's office of said city; and the redivision so made should constitute the wards and voting-districts without further action :—

*Held*, that the character and extent of the duty to be performed by the commissioners was defined by the legislature, leaving no further discretion to the commissioners than to ascertain certain facts, and conferring authority within specified limits to increase the number of wards in accordance with such facts.

*Held*, further, that this was not a delegation of legislative power, but an assignment of duty to ministerial officers.

*Held*, further, that the act was not unconstitutional.

BILL IN EQUITY seeking relief by injunction upon facts set forth in the opinion.    Bill dismissed.

STINESS, C. J.    The complainant, as a citizen and taxpayer of Pawtucket and as warden of the second ward of said city, for himself and other citizens and taxpayers, brings this bill to enjoin the mayor, aldermen, and city clerk of Pawtucket from acting under the report of commissioners to divide said city into wards, pursuant to Public Laws cap. 1018, upon the ground that said act is unconstitutional.

As an officer of the city, whose office will cease with a new assignment of wards, it is clear that the complainant cannot maintain a bill simply upon the ground, apart from the constitutionality of an act, that he will thereby be deprived of his office.    *Gray* v. *Granger*, 17 R. I. 201.    Whether the bill can be maintained on the ground of citizenship and payment of taxes we will not stop to inquire, because the annual election is so near at hand that a decision of this matter is of great importance and delay might involve serious complications.

The act in question provides that three commissioners should be appointed by the governor, with the advice and consent of the senate, not more than one of whom should be an elector of Pawtucket, who should divide the city into not more than seven wards, in such manner as to secure, as nearly as may be, an equal number of electors in each ward, having

regard to the number of inhabitants therein.   The commissioners were also directed to divide each ward into a convenient number of voting districts, and to file a map of such redivision in the city clerk's office of said city; and the redivision so made should constitute the wards and voting-districts without further action.

It is urged that this act is unconstitutional because it delegates legislative powers to commissioners in determining the number of wards.

The first question is whether the power to divide a city into wards is a legislative or an administrative and ministerial act.

(1)   We think that the character and extent of the duty to be done by the commissioners shows it to be of the latter class. The act is mandatory, and explicit, to divide the city into wards.   As to this matter the commissioners have no discretion.   Neither have they an absolute discretion as to the lines of the wards, but only so to make them as to include, as near as may be, equal numbers of voters, having regard to the number of inhabitants therein.   This is clearly a ministerial duty to ascertain the distribution of inhabitants and voters through the city, for the purpose of making an equitable adjustment of representation in the city government.

This could not be known to the legislature except by special investigation, which the commission was appointed to conduct.

The total population must be traced to streets and sections, to ascertain the numbers therein; the number of voters must also be found, and due adjustment made, to allow for probable changes in the future; and upon the facts so found the division is to be made.   It may be safely assumed that parts of the city are compact, and others sparsely settled.   To make the division advantageous for any considerable time, it may not be possible to divide the city into an arbitrary number of wards, because, outside of the compact part, large tracts of territory must be included to get an equality in numbers, and these, as they are filled, would at once disturb the equilibrium of the wards.   The evident purpose of the act is to

equalize representation in the city government. To maintain this it may be, and doubtless is, necessary to have a larger number of wards to which vacant tracts, where growth may be expected, may be assigned, with the prospect of still keeping a substantial equality. But all this is ministerial, and not legislative, work. When a commissioner or surveyor runs the boundary line of a State or town, he must act, in many things, upon his judgment, and according to his determination persons and territory may be within or without the jurisdiction of the State or town; still no one would claim that his was other than a ministerial duty.

When a duty is ministerial or administrative, there can be no question that the act directing the duty to be done is constitutional.

An important instance of this is found in *Field* v. *Clark*, 143 U. S. 649. The question raised in that case was under an act of congress authorizing the president to suspend the free introduction of sugar, molasses, coffee, tea, and hides, when he is satisfied that any country producing such articles imposes duties or other exactions upon the agricultural or other products of the United States, which he may deem to be reciprocally unequal or unreasonable.

The court held that the act was not unconstitutional, because nothing involving the expediency or just operation of such legislation was left to the determination of the president. He was simply to ascertain a fact, and his only discretion was as to the duration of the suspension. But the court said that related only to the enforcement of the policy, and issuing his proclamation on finding the fact was obedience to the legislative will and not the function of making laws. He was declared by the court to be "the mere agent of the law making department to ascertain and declare the event upon which its expressed will was to take effect."

The court cited the words of Judge Ranney, in *Cincinnati* v. *Commissioners*, 1 Ohio St. 77, as follows: "The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its exe-

cution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

Judge Ranney also said, in the opinion cited: "The legislature might perform their duties directly, but, for the most obvious reasons, could not as understandingly and efficiently do it as by the employment of these subordinate agencies." In that case county commissioners were authorized to subscribe for capital stock in the plaintiff company, after the assent of a majority of the electors of the county had been obtained in an election held for that purpose.

In *People* v. *Bennett*, 29 Mich. 451, the court said: "The powers of legislatures are by most of our constitutions confined to legislative functions, but this term is broad enough to include a great mass of political and discretionary action, which may be performed directly by the legislature, or delegated to local authorities having general or qualified control over local business."

In *Locke's Appeal*, 72 Pa. St. 491, the court said: "What is more common than to appoint commissioners under a law to determine things upon the decision of which the act is to operate in one way or another?"

In *Stilz* v. *Indianapolis*, 55 Ind. 515, the court said: "Boards of commissioners have been long since authorized by the legislature to form new counties, change the boundaries of old ones, and reconstruct township lines, and their constitutional power to do so has never, we believe, been seriously questioned."

In *Jacksonville* v. *L'Engle*, 20 Fla. 344, the language of the court was: "Like the power to hear and determine applications to lay out, open, and discontinue roads, locate and build bridges, and similar powers and duties, they merely exercise such judgment and discretion, adopting such measures under the law as to them may seem conducive to the public convenience and public needs. Indeed, to deny the power of the legislature to confer such duties upon ministerial officers, in performance of which duties they merely exercise a discreet judgment with reference to the convenience

and interests of the public, would have the effect to abrogate nearly if not quite all the powers and duties usually exercised by county commissioners in conducting the ordinary business of the county."

Many cases might be cited to the same effect, but these are quite sufficient to show that legislation of this character is not generally regarded as a delegation of legislative power, but an assignment of duty to ministerial officers.

The complainant relies upon several cases which we will examine.

*In re Ridgefield Park,* 54 N. J. L. 288, involved the constitutionality of a law which provided that a justice of the Supreme Court, upon petition to that effect, should take steps for the formation of a village, by determining whether the proposed boundaries are advantageous and consistent with public interests, in view of the character of the locality and community proposed to be incorporated, and will not unduly or unreasonably include or exclude any territory that ought not to be included or excluded ; and by confirming, amending, or altering the boundaries as shall seem to him most consistent with public and private interests. To the voters within the territory defined by the judge, the question was then to be submitted whether the proposed village should be incorporated. If approved, a municipality was created, with large powers of local government.

It was held that the power of incorporating municipalities belongs to the legislative and not to the judicial department, and that the legislature could not transfer it to the judiciary. In order that the decision might not be understood as going further, the court said : "It is not to be inferred from this that the legislature may not delegate portions of this authority, for there are many instances in which the creation, consideration, and division of municipalities have been made subject to the votes of the resident electors. But such right of delegation does not militate against the idea that the power is constitutionally legislative. Being so, it cannot be exercised by a justice of the Supreme Court."

This qualification of the opinion covers the question pre-

sented in this case; for if the power to be exercised can be delegated at all it can be delegated as well to commissioners as to a majority of the electors, so far as the constitutionality of the act is concerned.    With reference to the New Jersey case, it is to be noted that the decision is based upon a clause of the constitution which provides that no person or persons belonging to or constituting one of the three departments of the State shall exercise any of the powers properly belonging to either of the others.

Under this provision it is clear that the duty could not be given to a member of the judicial department.

*State* v. *Simons*, 32 Minn. 540, was a similar case, where legislative power was delegated to a court, and the act was held to be unconstitutional on that ground, although it does not appear that there was a special prohibition in the constitution like that in New Jersey.    But that the court did not intend to cover a case like this, appears in these words : " Had the legislature, by the act in question, fixed and specified all the conditions and facts upon which the incorporation of certain territory should depend, we do not question their right to refer to some tribunal or body the question of ascertaining and determining the existence of these facts and conditions.
.   .   .    Boards of county commissioners are already, under certain limitations, invested with somewhat similar powers in the organization and change of boundaries of towns and school districts."

In view of such statements by the courts, neither of the cases can be deemed to be authority against the constitutionality of the act before us.

The recent case of *State* v. *Elizabeth*, 49 Atl. Rep. 1106 (N. J.), is especially relied on by the complainant as an authority against the validity of this law, and at first sight it may seem to be so, but it is not.    The act in that case authorized the governor, in his discretion, upon the application of one hundred voters, to district or to redistrict wards in the cities of the State.

This was held to be unconstitutional and void, as an unlawful delegation of legislative powers.    The objection, however,

was not to the power given to the commissioners, but to the governor. It gave him absolute discretion whether to appoint or not. He could make the law operative or inoperative, in his discretion; hence it left the creation of municipal corporations not with the legislature, but with him. The court clearly pointed this out, as follows: "That this law commits to the governor the determination of an important question of public policy controlling the local government of cities does not admit of controversy, as he is given an absolute and unlimited discretion, controlled by no rule, to be exercised in accordance with no facts to be ascertained by him, and upon no principle or terms of expediency declared by the legislature."

The case was radically different from that here presented. See also recent case *State* v. *Corker*, 52 Atl. Rep. 362. (N. J. Ct. Ex. & Ap.)

In the same line with these cases is that of *Dowling* v. *Lancashire*, 92 Wis. 63, where an act gave power to an insurance commissioner to prepare and adopt a standard fire insurance policy, and that no other could be lawfully issued or used within the State. The court held that this could not be done; but it added: "Where an act is clothed with all the forms of law and is complete in and of itself, it may be provided that it shall become operative only upon some certain act or event, or, in like manner, that its operation may be suspended; and the fact of such act or event, in either case, may be made to depend upon the ascertainment of it by some other department, body, or officer, which is essentially an administrative act."

As we have shown above, this is exactly the present case. It commits to a ministerial board a given and an administrative duty, with no further discretion than that of ascertaining certain facts and of having authority, within specified limits, of making room to adjust such facts by an increase of wards.

The city charter of Pawtucket fixed the number of wards at five. This act did not give any powers to the commissioners to diminish that number, but it allowed an increase of

two, which clearly was not an unreasonable margin for the purposes of adjustment.

The obvious principle in the decisions is that the legislature shall direct the thing to be done, but it may provide a ministerial agency to ascertain when and how it shall be done.

The power of the legislature over cities and towns, as auxiliaries and subdivisions of the State, to create, divide, and even to abolish them, is sufficiently set forth in *Laramie* v. *Albany*, 92 U. S. 307, and *Barnes* v. *Columbia*, 91 U. S. 540.

We see no reason for holding the act in question to be unconstitutional.

The practice of the legislature, from the early days of the colony, which has never been questioned, is in accord with this conclusion.   Instances of a similar delegation of discretionary power are too numerous to mention in detail.   As early as 1664, commissioners were appointed to accept and declare freemen in Block Island.   From that year down to 1860, commissioners have frequently been appointed to compromise, settle, and determine the boundaries of the colony and State, a matter quite as important as the number or boundaries of wards.

Very frequently commissioners have been appointed to run the boundaries of towns, set off under a general description, and almost uniformly to apportion the property and debts of a town divided.

In two amendments to the charter of Providence, authority has been given to the city council, in Pub. Laws 1872, cap. 989, "to provide by ordinance for the division of said city into as many wards, not exceeding ten, as they shall think expedient;" and in Pub. Laws 1874, cap. 382, to divide the city "into not exceeding twelve wards."

As we have said above, if it is a power belonging alone to a legislature, it can no more be conferred upon a city council than upon commissioners.

The bill is dismissed.

*Hugh J. Carroll*, for complainant.
*E. W. Blodgett*, for respondents.